**The People of the State of Illinois, Plaintiff-Appellee, v. John D. Dillingham, Defendant-Appellant.**

Gen. No. 68–186.

Second District.

June 30, 1969.

Carbary, Carbary and Chapski, of Elgin, for appellant.

William V. Hopf, State's Attorney of DuPage County, of Wheaton, and Ralph J. Gust, Jr., Assistant State's Attorney, for appellee.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

This appeal questions the propriety of a conviction of the offense of driving while license suspended (Ill Rev Stats 1967, c 95½, § 6–303) in DuPage County after a plea of guilty and judgment of conviction of the same charge in Kane County.

Defendant claims that the judgment below was in error because it constituted a successive trial for the same

offense against the State within the bar of either the constitutional provision against double jeopardy (Ill Const, § 10, art 2) or a similar statutory provision of Ill Rev Stats 1967, c 38, 3–4(a) (1) prohibiting a subsequent prosecution based on the same facts as a former prosecution.

The issue narrows to the question of whether the acts charged in each county were part of a single, continuous offense, as the State agrees that, after judgment, such offense cannot be again prosecuted. The State urges that the defendant has the burden of proof to show the singleness and continuity of the offense and that he has not sustained that burden on the record.

Defendant was operating a motor vehicle in Elgin, Kane County, Illinois, on April 21st, 1968. The record does not show the exact time such driving was commenced, nor the exact time the Elgin police saw the defendant driving.

An effort was made by the Elgin police to cause the defendant to stop his vehicle because the manner in which defendant was driving had come to their attention. Defendant eluded the Elgin police by proceeding from Elgin onto the Northwest Toll Road in an easterly direction at a high rate of speed.

Trooper Wills of the DuPage County police testified that within minutes after the Elgin police car began pursuit he was aware of the situation from a radio report, although he wasn't involved in the chase at that particular time. Some time thereafter he was informed by radio that the Elgin car had lost defendant on the Tollway, and was advised to try for an intercept on Route 59 as this was the next exit. The witness moved into a position on Route 59. He observed the defendant coming south on Route 59 behind a stream of cars, running normally, and as the defendant passed the squad car the witness flashed his light, and defendant "floored it." The chase continued for approximately five miles at

163

speeds which, at times, exceeded 100 miles an hour. At approximately 5:15 the witness intercepted defendant in a cornfield and issued the ticket.

The arresting officer was of the opinion that, from the time he first heard the report on the radio to the time he apprehended defendant, it was "approximately a half hour, just guessing, I mean."

The defendant did not testify.

The trial court based its denial of a motion to dismiss on the theory that when the defendant was first confronted by the Kane County authorities, cessation of driving at that time was mandatory, and defendant, by his own acts of continuing to drive in his attempt to elude the authorities, thereby committed a new and separate offense.

While a mandatory duty to cease driving when confronted by police is a realistic standard for a unit of the offense of eluding police, it is irrelevant to the violation of driving on a suspended license as the defendant was under a mandatory duty to cease driving during the entire time he was operating his automobile regardless of any intervention of the police.

█ The charge of driving while license suspended requires proof of the act of driving and the fact of the suspension of the driving license. The existence of two offenses is dependent upon the violation of a severable duty.

█ There can, of course, be separate convictions in separate counties, or even in one county, for the offense of driving with license suspended if the elements of the offense are present under circumstances which are legally separate and distinct, namely two separate acts of driving, which are not part of a continuing venture.

Unfortunately the statute (Ill Rev Stats 1967, c 95½, § 6-303) does not clearly define the unit of the offense of driving with license suspended and we must look else-

164

where for a definition of what is considered a separate and distinct offense under the statute.

In the early case of Armour Packing Co. v. United States, 153 F 1, 5–6 (1907), and later in United States v. Midstate Horticultural Co., 306 US 161, 83 L Ed 563, 59 S Ct 412, 414 (1939), a continuing offense was defined:

> "A continuing offense is a continuous, unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force, however long a time it may occupy."

While relevant, factors such as time and distance are not dispositive, and the issue of whether an offense is "continuous" must be determined in the context of the particular offense at hand. Armour v. United States, 28 S Ct 428, 433 (1907).

■■ In the offense of driving while license suspended, . . . "the particular distance the defendant may have driven . . . is immaterial as far as the commission of the offense is concerned." People v. Jensen, 24 Ill App2d 302, 314, 164 NE2d 228 (1960), affirmed in 21 Ill2d 52, 54, 171 NE2d 16 (1961).

Whether the defendant stopped driving and then began again should not be dispositive of whether the offense was continuous. The question of whether the previous venture was terminated in a real rather than a merely technical or artificial sense would seem to provide a more meaningful test of singleness and continuity.

The distance between the point on the Northwest Tollway where the defendant was last seen by the first policeman and the point on Route 59 near Interstate 190 where the second policeman first spotted the defendant is somewhere between 20 and 25 miles. From the evidence it is clear that the defendant resumed a normal speed at some time during the unaccounted for period while he

travelled that distance, and with an outside limit of 30 minutes to cover the entire distance more than a brief stop would have been impossible.

Although a physical stop by the defendant during that time would have been possible and it is probable that he stopped for a signal or a stop sign or to pay a toll, it seems improbable that the original act of driving was terminated and begun again in a sense that would destroy the continuity of the offense. See Boyle v. State, 241 Ind 565, 170 NE2d 802, 807, 173 NE2d 747 (1960).

■ While the State urges that since the time lapse has not been established and the fact of a possible stop has not been precluded, therefore, defendant has failed to sustain his burden of proof of an affirmative defense, we are not so persuaded under the particular facts of this case. Where the legislature has not explicitly stated the unit of an offense, the doubt will be judicially resolved in favor of construing a single transaction as a single offense. Gore v. United States, 357 US 386, 2 L Ed 2d 1405, 1409, 78 S Ct 1280 (1958) ; Bell v. United States, 349 US 81, 99 L Ed 905, 75 S Ct 620, 622 (1955).

■ We feel that the doubt must be resolved in the defendant's favor. In a real, as opposed to a technical or artificial, sense the driving engaged in by the defendant from the time he was first sighted by the Kane County Police until apprehension by the DuPage County Police was a continuous venture.

■ In our view, this is a case in which an offense against the State—not one against a County—has been committed partly in one county and partly in another and the prosecution and the trial should have been only in the county first acquiring jurisdiction.

We, therefore, reverse.

Reversed.

MORAN, P. J. and DAVIS, J., concur.