(No. 52547.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. JIMMY EUGENE BARKER, Appellee.

*Opinion filed December 19, 1980.—Rehearing
denied January 29, 1981.*

WARD and MORAN, JJ., dissenting.

William J. Scott, Attorney General, of Springfield, and Ronald Dozier, State's Attorney, of Bloomington (Donald B. Mackay, Melbourne Noel, Thomas E. Holum, and William M. Wippold, Assistant Attorneys General, of Chicago, and Gary J. Anderson and Jane F. Bularzik, of the State's Attorneys Appellate Service Commission, of Springfield, of counsel), for the People.

Richard J. Wilson and Daniel D. Yuhas, Deputy Defenders, and James K. Zerkle, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

The defendant, Jimmy Eugene Barker, pleaded guilty to two counts of attempted murder in the circuit court of McLean County. After sentencing in accordance with a written plea agreement, the defendant moved to vacate his guilty pleas under Supreme Court Rule 604(d) (73 Ill. 2d R. 604(d)). This motion was denied. The appellate court, in a Rule 23 order (73 Ill. 2d R. 23), reversed the defendant's two convictions for attempted murder and remanded the cause to allow defendant to plead anew. (72 Ill. App. 3d 1110.) We allowed the State's petition for leave to appeal. 73 Ill. 2d R. 315.

The defendant urges us to affirm the appellate court's order, claiming that (1) the indictment to which he pleaded guilty was fatally defective for failing to allege an essential element of the offense, and (2) his guilty pleas were not supported by a factual basis as required by

Supreme Court Rule 402 (73 Ill. 2d R. 402), and (3) that his pleas were not voluntary since the trial judge failed to admonish him as to the "intent to kill," an essential element of attempted murder. We do not agree and reverse.

On May 25, 1978, an indictment replacing an information charged the defendant with two counts of unlawful use of weapons, one count of armed violence, and two counts of attempted murder. The attempted-murder counts, to which the defendant later pleaded guilty, were identical in their language except for the name of the victim. They stated of the defendant that "he knowingly with intent to commit the offense of murder, did acts which constitute a substantial step towards the commission of murder, to wit: firing a sawed-off shotgun in the direction of Ed Moser [Richard Ryan], a police officer." A negotiated plea agreement was presented to the court on July 6, 1978, in which the defendant agreed to plead guilty to the two counts of attempted murder. In return, the State agreed to nol-pros the remaining three counts, as well as several other unrelated offenses. It was further agreed that the defendant would not be sentenced to more than 20 years' imprisonment. A hearing was held at which the attempted-murder charges were read to the defendant. He was also admonished in accordance with Supreme Court Rule 402 (73 Ill. 2d R. 402). At no time was the defendant specifically informed by the court that the "intent to kill" was a necessary element of attempted murder. After admonishing the defendant, the court requested the prosecutor to relate the factual basis for the pleas. After the prosecutor did so, the court asked the defendant if he agreed with the prosecutor's statement and if that was what in fact happened. The defendant answered in the affirmative to both questions. The court then found that there was a factual basis for the pleas and that the pleas were voluntary. The court, after accepting the pleas

of guilty, ordered a presentence investigation and report and continued the matter for a sentencing hearing.

A sentencing hearing was held on August 10, 1978, during which the defendant stated, "I never had no intentions of taking no one's life. I was just scared that night and trying to get away." After being sentenced to 20 years' imprisonment, the maximum term provided by the agreement, defendant filed a motion to withdraw his pleas of guilty. Defendant's motion contended that he was not properly admonished as to the nature of the charge and that the factual basis underlying his pleas of guilty did not establish the requisite intent to kill. The motion was denied.

In the appellate court the defendant challenged the denial of his motion and for the first time raised the claim that the indictment was defective. The appellate court ruled that both the indictment and the factual basis were sufficient but reversed the conviction as a matter of "fundamental fairness *** since it is arguable that his plea related to the lesser mental state [for murder]," that is, a specific intent other than to kill. Throughout all of these proceedings, the defendant was represented by counsel, and no claim has been made challenging the adequacy of that representation.

Defendant argues that the indictment to which he pleaded guilty was fatally defective for failing to allege an essential element of the offense—the intent to kill. We do not agree. In *People v. Trinkle* (1977), 68 Ill. 2d 198, this court held that, to convict one for attempted murder, the State must prove that the accused acted with the intent to kill. Since *Trinkle,* the court has adhered to that holding. (See *People v. Harris* (1978), 72 Ill. 2d 16; *People v. Roberts* (1979), 75 Ill. 2d 1; *People v. Jones* (1979), 81 Ill. 2d 1.) The defect common to all those cases was not, as is claimed here, a failure to allege an essential element of attempted murder. Rather, the error arose

from defining the substantive offense of murder in the instructions in such a way that a lesser mental state other than intent to kill would seemingly support a conviction for attempted murder.

In *Harris,* for example, the defendant was charged with attempted murder. The jury was instructed both as to the elements of an attempt and the substantive offense of murder. The instruction on murder stated:

> "A person commits the crime of murder who kills an individual if, in performing the acts which cause the death, he intends to kill or do great bodily harm to that individual." (72 Ill. 2d 16, 20.)

This instruction was held defective for it allowed the jury to return a guilty verdict if the defendant acted only with intent to do great bodily harm and if he did not have the intent to kill. If it were not necessary to prove intent to kill to convict one for attempted murder, any defendant who committed a battery intending only to harm his victim would automatically be guilty of attempted murder. *People v. Trinkle* (1977), 68 Ill. 2d 198, 201.

The guilt of the defendant in the case before us was not determined by a trier of fact but by pleas, so we do not have the possibility of a jury, because of an erroneous instruction relative to the requisite intent, convicting a defendant when he, in fact, did not have the intent to kill. It was the erroneous instruction defining murder which was present in *People v. Muir* (1977), 67 Ill. 2d 86, *People v. Trinkle* (1977), 68 Ill. 2d 198, *People v. Harris* (1978), 72 Ill. 2d 16, and *People v. Roberts* (1979), 75 Ill. 2d 1, that created the difficulty in those cases. In fact, the language that was so troublesome, which is found in the alternate definitions of murder—"He either intends to kill or do great bodily harm ***" and "He knows that such acts create a strong probability of death or great bodily harm ***" (Ill. Rev. Stat. 1977, ch. 38, pars. 9—1(a)(1), 9—1(a)(2))—is totally absent in this case.

None of this language was contained in the indictment. It was not used by the court when admonishing the defendant. At no stage of the proceeding was it even intimated that a person could be found guilty of attempted murder if he only had the intent to do great bodily harm.

As stated earlier, the indictment charged that the defendant *with the intent to commit the offense of murder* did acts which constituted a substantial step toward the commission of murder, to wit: *firing a sawed-off shotgun in the direction of a police officer.* The Criminal Code of 1961, in defining the inchoate offense of attempt, provides:

> "A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense." (Ill. Rev. Stat. 1977, ch. 38, par. 8—4(a).)

In this case, the literal requirement of the statute has been complied with. The defendant was charged with the attempt to commit a specific offense (murder) and with doing acts which constituted a substantial step toward the commission of that offense (firing a sawed-off shotgun in the direction of a police officer). Admittedly the indictment could have been in more detail and, in addition to the two allegations it now contains, could have further stated that the acts were performed with the intent to kill. However, this further allegation would have been redundant. Under section 9—1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(a)) a person may commit murder without specifically intending to kill anyone. However, since all murders involve a killing, a person cannot intend to commit murder without intending to kill. It is not logical to argue that an indictment charging one with the intent to commit murder does not charge that he had the intent to kill. Since the indictment has charged that the defendant, with the intent to commit murder, did certain acts, it is unnecessary to again

charge that the acts he performed, as a substantial step toward the commission of that offense, were committed with the specific intent to kill. If the indictment had only charged the defendant with the intent to kill and did not include the allegation that the defendant acted with the intent to commit murder, it would have been defective under section 8—4(a) of the Criminal Code, quoted above, in that it would not have charged the defendant with an intent to commit a specific offense. The act of killing, or even intending to kill, is not necessarily a criminal offense (self-defense, for example).

The indictment is not defective. It is sufficiently clear and certain to apprise the defendant of the crimes with which he stands charged in order that he may intelligently prepare a defense and plead the judgments in bar of subsequent prosecutions for the same offenses. (*People v. Patrick* (1967), 38 Ill. 2d 255, 257.) The indictment charges the offenses in the language of the statute and, contrary to defendant's contention, does not omit an essential element.

Defendant next argues that his guilty pleas were improperly accepted since there was no factual support regarding an essential element of the offense—intent to kill. Supreme Court Rule 402(c) requires that, before a court enters final judgment on a plea of guilty, there must be a determination that a factual basis exists for the plea. (73 Ill. 2d R. 402(c).) However, the quantum of proof necessary to establish a factual basis for the plea is less than that necessary to sustain a conviction after a full trial. (*People v. Nyberg* (1976), 64 Ill. 2d 210, *cert. denied* (1977), 430 U.S. 970, 52 L. Ed. 2d 362, 97 S. Ct. 1654; *People v. Ginder* (1975), 26 Ill. App. 3d 295; *People v. Arnold* (1974), 18 Ill. App. 3d 95.) All that is required to appear on the record is a basis from which the judge could reasonably reach the conclusion that the defendant actually committed the acts with the intent (if any)

required to constitute the offense to which the defendant is pleading guilty. (*People v. Hudson* (1972), 7 Ill. App. 3d 800.) In evaluating the sufficiency of the factual basis to support a plea of guilty, a trial judge is in much the same position and would apply similar standards as those used in determining the sufficiency of the State's evidence at trial to withstand a motion for a directed verdict of not guilty.

In the instant case a factual recital was made by the State's Attorney, who described the events leading up to a gun battle in which the defendant was injured. The recital described a chase on foot during which five police officers pursued Barker and attempted to surround him. Speaking specifically of the shooting incident, where the defendant employed a sawed-off shotgun, the State's Attorney said, "Mr. Barker fired one shot in the direction of Detective Richard Ryan and also fired one shot in the direction of Officer Ed Moser." The following discussion was then held in court:

> "THE COURT: Mr. Barker, you've heard what Mr. Murphy said here this morning about what happened in this incident, I take it.
>
> THE DEFENDANT: Yes.
>
> THE COURT: You understand what he said?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And is there any question about what he said that you have?
>
> THE DEFENDANT: No.
>
> THE COURT: Do you agree that that's what in fact did happen?
>
> THE DEFENDANT: Yes."

From the above facts, freely adopted and in no way controverted by the defendant, a jury could infer an intent to kill. While the intent to kill is not the only inference to be drawn from firing a sawed-off shotgun in the direction of police officers, it is a permissible one. This inference, drawn from the uncontroverted fact that defendant

committed the act of firing the weapon, provides a factual basis for both elements of attempted murder, the intent to commit the offense of murder and the doing of acts which constitute a substantial step toward the commission of that offense. Thus the provisions of Rule 402(c) have been satisfied. We discuss later the effect of a defendant's protestation of innocence upon compliance with Rule 402(c).

Defendant argues that the trial court's failure to admonish him with respect to the requisite "intent to kill" renders his plea involuntary. We find the trial court's admonishments were sufficient and that the defendant has failed to establish a basis for withdrawal of his guilty plea.

In *People v. Krantz* (1974), 58 Ill. 2d 187, this court held that Rule 402 requires only substantial and not literal compliance with its provisions. (*People v. Krantz* (1974), 58 Ill. 2d 187, 192.) The holding of *Krantz* was expanded in *People v. Robinson* (1976), 63 Ill. 2d 141, to include the notion that a guilty plea, accepted in substantial compliance with Rule 402, will not be set aside absent an allegation and proof of prejudice to the accused. (*People v. Robinson* (1976), 63 Ill. 2d 141, 146.) As noted earlier, the indictment adequately alleged the requisite intent to kill, an element essential to a conviction for attempted murder. The indictments were each read to the defendant before his guilty pleas were accepted. He also acknowledged having received copies of them. In reply to the court as to each indictment, he stated that he had no question about "what the charge is or what it means." In *People v. Robinson* this court stated that the requirement of Rule 402(a)(1) (58 Ill. 2d R. 402(a)(1)) is two pronged. The court, in admonishing the defendant, (1) must inform him of the nature of the charge and (2) must determine that he understands the nature of the charge. In this case the court did not enter judgment on the pleas of guilty until after the prosecutor had stated the factual basis for

them. After the factual basis had been stated, the court questioned the defendant concerning them and the defendant agreed that "that's what in fact did happen." This acknowledgment, coupled with defendant's response following the reading of the indictment to him in open court that he had no question about "what the charge is or what it means," satisfied the requirement of substantial compliance with the provisions of Rule 402. The record satisfactorily shows that the defendant was informed of the nature of the charges, including the requirement of the specific intent to commit murder, and that he understood the nature of the charges. The fact that the court did not, in addition to informing the defendant he was charged with committing the acts with the intent to commit murder, also inform him that he must have had the specific intent to kill does not demonstrate a failure to substantially comply with Rule 402, nor does it indicate that the pleas were not voluntary.

The defendant asserts that his statement that he didn't intend to kill anyone made on August 10, 1978, at the sentencing hearing, which he argues negated the requisite mental state for the offense, put the court on notice of his misapprehension of the law and rendered his pleas involuntary. In support of this point, the defendant relies on *Henderson v. Morgan* (1976), 426 U.S. 637, 49 L. Ed. 2d 108, 96 S. Ct. 2253. The accused in *Henderson,* charged with first-degree murder in a State trial court, pleaded guilty to second-degree murder without having been informed by the court of the requisite intent to kill. At a sentencing hearing, the defendant's attorneys made a statement explaining their client's version of the events, particularly noting that respondent "meant no harm to that lady" (426 U.S. 637, 643, 49 L. Ed. 2d 108, 113, 96 S. Ct. 2253, 2256). Defendant's efforts at vacating his plea having failed, he filed a petition for writ of *habeas corpus* in the United States district court. At an eviden-

tiary hearing on his petition, the defendant testified that he would not have pleaded guilty had he known that an intent to cause death was an element of the offense.

A significant difference between our case and *Henderson* is found in the fact that no formal charge of second-degree murder was ever made against the defendant in *Henderson.* He had originally been charged with first-degree murder, a crime which requires a different mental state than second-degree murder. His attorneys had attempted to have this charge reduced to manslaughter. The prosecution, however, would agree to nothing less than second-degree murder. Defendant's attorneys recommended that he plead to the reduced charge, but never explained to him the required intent for that offense. The Supreme Court noted that had the defendant been charged with second-degree murder, the indictment would necessarily have included the charge of the required mental state. The Supreme Court then noted that had he been charged in an indictment which alleged the necessary mental state, that element of the offense could then have been proved by the objective evidence, even if the defendant's actual state of mind were consistent with innocence.

In our case, unlike in *Henderson,* the indictment informed the defendant that he was charged with performing certain acts with the intent to commit murder. Since he was charged with having the requisite mental state, as the court stated in *Henderson,* this element of the offense could be proved by the objective evidence that the defendant fired the shotgun in the direction of the officers. From the evidence summarized in the statement of the factual basis, a jury could find the defendant guilty of attempted murder regardless of his protestations that he did not intend to kill anyone when he fired the gun. We therefore do not agree with the defendant's contention that his statement made at the sentencing hearing negated the requisite mental state or that it put the court on notice of

his misapprehension of the law so as to render his pleas involuntary.

This is essentially the rationale of the Supreme Court in *North Carolina v. Alford* (1970), 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160. In that case the defendant was indicted for first-degree murder, a capital offense in North Carolina. On recommendation of his attorney, the defendant pleaded guilty to second-degree murder. Before accepting the plea, the court heard a summary explanation of the State's case, after which the defendant was permitted to testify. He stated he had not committed the murder but was pleading guilty because he was faced with the threat of a death sentence if he did not do so. Nonetheless, he reaffirmed his desire to plead guilty. The Supreme Court stated that without more than the defendant's protestations of innocence, it could be argued that a conviction entered on his guilty plea was invalid since his assertion of innocence negated his admission of guilt, which, as was observed in *Brady v. United States* (1970), 397 U.S. 742, 25 L. Ed. 2d 747, 90 S. Ct. 1463, is normally central to the plea and the foundation for entering judgment against the defendant. The court, however, noted in *Alford* that there was strong evidence of guilt which substantially negated the defendant's claim of innocence and that the defendant may have intelligently concluded that because of this evidence his interest required the entry of a guilty plea. The Supreme Court concluded that because of the strong factual basis for the plea and the defendant's desire to enter the plea despite his professed belief in his innocence, the judge did not commit constitutional error in accepting it.

While *Alford* was decided on a constitutional basis, it noted that various State and Federal decisions cautioned that pleas of guilty, coupled with claims of innocence, should not be accepted unless there is a factual basis for the plea. The court also pointed out that Rule 11 of the

Federal Rules of Criminal Procedure expressly provides that the court shall not enter judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea. 400 U.S. 25, 38 n.10, 27 L. Ed. 2d 162, 171-72 n.10, 91 S. Ct. 160, 167 n.10.

Rule 402(c) is based upon Rule 11 of the Federal Rules of Criminal Procedure. Although a record which shows an absence of a factual basis for a plea would reflect noncompliance with Rule 402(c), a court is not precluded from accepting a plea of guilty, in spite of a defendant's claim of innocence, if the record reflects a factual basis from which a jury could find the defendant guilty of the offense to which the plea was entered. In our case the strong factual basis is such that a jury could find that the defendant had the intent to commit murder even though he professes that when he fired the shots he did not intend to kill anyone. Under such circumstances, the court would not be in violation of any constitutional right, or in violation of our Rule 402(c), in accepting pleas of guilty. We likewise find that the court in this case, for the same reasons, did not abuse its discretion in its denial of defendant's motion to withdraw his pleas of guilty.

The judgment of the appellate court is reversed, and the judgment of the circuit court of McLean County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

MR. JUSTICE WARD, dissenting:

I join with Mr. Justice Moran in dissenting. I fear that the majority opinion will renew the confusion that developed from *People v. Trinkle* (1977), 68 Ill. 2d 198.

MR. JUSTICE MORAN, also dissenting:

My departure from the majority stems from a fundamental disagreement as to the meaning of the phrase

"intent to commit the offense of murder." The majority claims that such phrase is synonymous with "intent to kill." I disagree. In murder, death of a person occurs. To sustain a conviction for such offense the State may prove any one of three mental states: intent to kill, intent to cause great bodily harm, or knowledge that the act would create a strong probability of death or great bodily harm. This is not true when the person survives and the perpetrator is charged with attempted murder. The offense of attempt is a specific intent crime. Where the offense is attempted murder, one and only one mental state must be charged and proved—intent to kill. It is not sufficient that a defendant intentionally or knowingly caused great bodily harm, for then he would be chargeable with aggravated battery—not attempted murder. (See Ill. Rev. Stat. 1977, ch. 38, par. 12—4(a); *People v. Muir* (1976), 38 Ill. App. 3d 1051, 1057.) This court has repeatedly held that intent to kill is the necessary mental state to be proved where the offense charged is attempted murder. (*People v. Trinkle* (1977), 68 Ill. 2d 198; *People v. Harris* (1978), 72 Ill. 2d 16; *People v. Roberts* (1979), 75 Ill. 2d 1; *People v. Jones* (1979), 81 Ill. 2d 1.) Thus, when an indictment states that a defendant acted with the "intent to commit the offense of murder," the charge not only fails to eliminate the other two mental states which can constitute *murder*—intent to cause great bodily harm or knowledge that the act will create a strong probability of death or great bodily harm—but also fails to charge a necessary element of the offense of murder.

The sixth amendment to the Constitution of the United States and article I, section 8, of the Constitution of Illinois require that, in criminal prosecutions, a defendant has the right to be apprised of the nature and cause of the accusations against him. (U.S. Const., amend. VI; Ill. Const. 1970, art. I, sec. 8.) This constitutional requirement is embodied in section 111—3(a)(3) of the Code of

Criminal Procedure of 1963, which directs that a criminal charge set forth "the nature and elements of the offense charged" (Ill. Rev. Stat. 1977, ch. 38, par. 111–3(a)(3)).

The question of when an indictment sufficiently informs a defendant of "the nature and cause of the accusation" had been painstakingly reiterated by the United States Supreme Court. In 1850 that court confronted the issue of whether an indictment for forgery is fatally defective for failure to charge that the crime was committed with a felonious intent. The court stated:

> "The general rule is, that the charge must be laid in the indictment so as to bring the case within the description of the offence as given in the statute, alleging distinctly all the essential requisites that constitute it. Nothing is to be left to implication or intendment. ***
>
> In all cases of felonies at common law, and some, also, by statute, the felonious intent is deemed an essential ingredient in constituting the offence; and hence the indictment will be defective, even after verdict, unless the intent is averred. The rule has been adhered to with great strictness; and properly so, where this intent is a material element of the crime." (*United States v. Staats* (1850), 49 U.S. (8 How.) 41, 44, 12 L. Ed. 979, 981.)

See *United States v. Heller* (6th Cir. 1978), 579 F.2d 990, 998-99; *United States v. Morrison* (9th Cir. 1976), 536 F.2d 286, 287-89; *United States v. Mekjian* (5th Cir. 1975), 505 F.2d 1320, 1324; *United States v. Wabaunsee* (7th Cir. 1975), 528 F.2d 1, 4; *United States v. Musgrave* (5th Cir. 1971), 444 F.2d 755, 761.

In *United States v. Cook* (1872), 84 U.S. (17 Wall.) 168, 21 L. Ed. 538, the court again addressed the question of when an indictment will be found insufficient to charge a defendant. The court stated:

"[T]he rule is universal that every ingredient of which the offense is composed must be accurately and clearly alleged in the indictment, or the indictment will be bad, and may be quashed on motion, or the judgment may be arrested, or reversed on error." (*United States v. Cook* (1872), 84 U.S. (17 Wall.) 168, 174, 21 L. Ed. 538, 539.)

See *United States v. Vesaas* (8th Cir. 1978), 586 F.2d 101, 103-04; *United States v. Camp* (8th Cir. 1976), 541 F.2d 737, 741; *United States v. Wabaunsee* (7th Cir. 1975), 528 F.2d 1, 3-4.

In *United States v. Carll* (1882), 105 U.S. 611, 26 L. Ed. 1135, the court ruled that an indictment for forgery failed to charge the defendant with any crime when it did not allege that the defendant knew the instruments in question to be false, forged, counterfeited, and altered. "The omission is a matter of substance, and not a 'defect or imperfection in matter of form only,' ***." *United States v. Carll* (1882), 105 U.S. 611, 613, 26 L. Ed. 1135, 1136.

The court again emphasized:

"No essential element of the crime can be omitted without destroying the whole pleading. The omission cannot be supplied by intendment or implication, and the charge must be made directly, and not inferentially, or by way of recital.

\* \* \*

*** Such particulars are matters of substance, and not of form, and their omission is not aided or cured by the verdict." (*United States v. Hess* (1888), 124 U.S. 483, 486-89, 31 L. Ed. 516, 517-18, 8 S. Ct. 571, 573-74.)

*Russell v. United States* (1962), 369 U.S. 749, 765, 8 L. Ed. 2d 240, 251, 82 S. Ct. 1038, 1047-48; *United States v. Heller* (6th Cir. 1978), 579 F.2d 990, 999; *United States v. King* (9th Cir. 1978), 587 F.2d 956, 963; *United States v.*

*Camp* (8th Cir. 1976), 541 F.2d 737, 739-40; *United States v. Mekjian* (5th Cir. 1975), 505 F.2d 1320, 1324; *United States v. Huff* (5th Cir. 1975), 512 F.2d 66, 69; *United States v. Wabaunsee* (7th Cir. 1975), 528 F.2d 1, 3-4; *United States v. Musgrave* (5th Cir. 1971), 444 F.2d 755, 761.

Indictments which fail to allege an essential element must be distinguished from indictments which are defective only as to matters of form. Defects which are merely matters of form and not of substance are cured by verdict, and objections after verdict come too late, regardless of the fact that they might have rendered an indictment bad if timely raised. *Joplin Mercantile Co. v. United States* (1915), 236 U.S. 531, 536, 59 L. Ed. 705, 708, 35 S. Ct. 291, 293; *United States v. Huff* (5th Cir. 1975), 512 F.2d 66, 69.

It is clear that all fundamental rules above set forth have retained "their full vitality under modern concepts of pleading." *Russell v. United States* (1962), 369 U.S. 749, 765-66, 8 L. Ed. 2d 240, 252, 82 S. Ct. 1038, 1048; *Hamling v. United States* (1974), 418 U.S. 87, 41 L. Ed. 2d 590, 94 S. Ct. 2887; *United States v. Vesaas* (8th Cir. 1978), 586 F.2d 101; *United States v. Heller* (6th Cir. 1978), 579 F.2d 990; *United States v. King* (9th Cir. 1978), 587 F.2d 956; *United States v. Camp* (8th Cir. 1976), 541 F.2d 737; *United States v. Morrison* (9th Cir. 1976), 536 F.2d 286; *United States v. Huff* (5th Cir. 1975), 512 F.2d 66; *United States v. Wabaunsee* (7th Cir. 1975), 528 F.2d 1; *United States v. Mekjian* (5th Cir. 1975), 505 F.2d 1320; *United States v. Musgrave* (5th Cir. 1971), 444 F.2d 755.

The defendant's right to know the nature and cause of the offense is guaranteed not only by the Constitution of the United States, but also by the Constitution of the State of Illinois. It "is no empty technicality, but a substantial provision that may not be ignored." *People v.*

*Green* (1938), 368 Ill. 242, 254, *overruled in part on other grounds in People v. Griffin* (1967), 36 Ill. 2d 430; *People v. Abrams* (1971), 48 Ill. 2d 446, 458-59.

Illinois cases have shown a long history of treating the "nature and elements" requirement of an indictment in conformance with the dictates of the United States Supreme Court. In *People v. Sowrd* (1938), 370 Ill. 140, 143-44, it was stated:

> "No rule of law is better settled than that an indictment or information must charge all the elements of the offense. As we said in *People v. Sheldon,* 322 Ill. 70: 'An indictment or information charging an offense defined by statute should be as descriptive of the offense as is the language of the statute and should allege every substantial element of the offense as defined by the statute.' The information here, put to that test, does not charge the defendant with any offense known to the law.
>
> We said in *People v. Green,* 368 Ill. 242: 'It is a rule, even in civil pleading, that if a complaint fails to state a cause of action the defect may be reached and the question raised on writ of error, even if there has never been any demurrer, motion for a new trial or motion in arrest of judgment. *** The same rule applies to criminal pleading, and if an indictment is void the error may be reached in this court even though there has been a plea of guilty in the trial court.' "

See *People v. Patrick* (1967), 38 Ill. 2d 255, 257; *People v. Furman* (1962), 26 Ill. 2d 334, 336; *People v. Harris* (1946), 394 Ill. 325, 327; *People v. Chiafreddo* (1942), 381 Ill. 214, 219-20.

Technical objections to matters of form are waived by a defendant's failure to present a motion to quash. (*People v. Barney* (1959), 15 Ill. 2d 503, 507; *People v.*

*Harris* (1946), 394 Ill. 325, 327; *People v. Pond* (1945), 390 Ill. 237, 239; *People v. Novotny* (1939), 371 Ill. 58, 61.) However, if an indictment fails to allege an essential element of the offense charged, the sufficiency of the indictment may be attacked by a motion to quash, motion in arrest of judgment, or an appeal. (*People v. Furman* (1962), 26 Ill. 2d 334, 335; *People v. Valley Steel Products Co.* (1978), 71 Ill. 2d 408, 425; *People v. Gregory* (1974), 59 Ill. 2d 111, 112; *People v. Edge* (1950), 406 Ill. 490, 494; *People v. Nickols* (1945), 391 Ill. 565, 571; *People v. Sword* (1938), 370 Ill. 140, 143-44; *People v. Green* (1938), 368 Ill. 242, 250-51, *overruled in part on other grounds in People v. Griffin* (1967), 36 Ill. 2d 430; *People v. Minto* (1925), 318 Ill. 293, 295.) Such an indictment will be subject to attack even if the accused has submitted a plea of guilty. " 'The effect of a plea of guilty is a record admission of whatever is well alleged in the indictment. If the latter is insufficient it confesses nothing.' " *Klawanski v. People* (1905), 218 Ill. 481, 484. See also *People v. Furman* (1962), 26 Ill. 2d 334, 335; *People v. Nickols* (1945), 391 Ill. 565, 571; *People v. Pond* (1945), 390 Ill. 237, 239; *People v. Green* (1938), 368 Ill. 242, 251, *overruled in part on other grounds in People v. Griffin* (1967), 36 Ill. 2d 430; *People v. Minto* (1925), 318 Ill. 293, 295; *People v. Wallace* (1925), 316 Ill. 120, 122.

Since the indictment here fails to clearly and unambiguously set forth the essential element of specific intent to kill, it is fatally defective and cannot support a conviction. This is true despite the fact that the defendant submitted a plea of guilty, because such a plea only confesses that which is clearly charged in the indictment. Since the indictment charges no offense, the plea of guilty cannot cure the defect.

The majority in the present case found the indictment valid by a strained interpretation of *People v. Trinkle*

(1979), 68 Ill. 2d 198, *People v. Harris* (1978), 72 Ill. 2d 16, *People v. Roberts* (1979), 75 Ill. 2d 1, and *People v. Jones* (1979), 81 Ill. 2d 1. The majority emphasized that the defect in each of the those cases was in the jury instructions. It concluded that since there was a guilty plea tendered by the defendant here, there was no danger of misinforming a jury. However, the basic thrust of those cases was to discard forever the notion that the mental states of intent to do great bodily harm and knowledge that such act would cause death or great bodily harm could suffice to constitute attempted murder. The necessity that the "intent to kill" be clearly set out is even more crucial when the defendant submits a plea of guilty to assure that the defendant's rights are not lightly cast aside. He must know, after all, the exact offense to which he admits guilt. Moreover, the fact that, in the series of cases beginning with *Trinkle*, the reversible error was in the instructions does not support the conclusion that a similarly fatal error cannot be contained in an indictment.

The majority also discounts the *Trinkle* series of cases by pointing out that in each the alternative definition of murder was recited in the instructions, which included the mental states of "intent to do great bodily harm" and "knowledge that such acts create a strong probability of death or great bodily harm." In the present case because the defendant tendered a plea of guilty, the problem of erroneous instructions was necessarily absent. Moreover, the majority points out that the indictment and admonishment did not include the language found to be troublesome in the *Trinkle* series of cases—"intent to do great bodily harm" and "knowledge that such acts create a strong probability of death or great bodily harm." However, this misses the point completely. It is the failure to include the essential element of "intent to kill" that is the problem. The simple absence of other erroneous

language cannot cure this flaw.

The majority's statement that "the indictment could have been in more detail" (83 Ill. 2d at 326) is a gross understatement. The inclusion of intent to kill is not a detail. It is the cornerstone of the indictment and without it the indictment is void. The majority's claim that the inclusion of the intent to kill would have been "redundant" (83 Ill. 2d at 326) is obviously absurd, since there was never mention of any specific intent in the first instance.

The majority attempts to bolster its holding by stating that "[i]f the indictment had only charged the defendant with the intent to kill and did not include the allegation that the defendant acted with the intent to commit murder, it would have been defective *** in that it would not have charged the defendant with an intent to commit a specific offense." (83 Ill. 2d at 327.) This adds nothing to the argument as to the correctness of the instant indictment, since a converse proposition cannot be used, logically, to prove the reverse premise.

The end result is that nowhere in the indictment is the defendant notified that he must have had the intent to kill in order for his act to constitute the offense of attemped murder. The legal term "murder" does not and cannot supply this omission. Consequently, the indictment is void and cannot support a conviction.

The majority rejects defendant's argument that the trial court's failure to admonish him with respect to the necessary element of "intent to kill" rendered his plea involuntary. By citing *People v. Krantz* (1974), 58 Ill. 2d 187, it points out that Supreme Court Rule 402 "requires only substantial and not literal compliance with its provisions." (83 Ill. 2d at 329.) I agree that substantial compliance is generally necessary when a court admonishes a defendant prior to accepting a tendered guilty plea. However, it is constitutionally mandatory that a defendant be specifically informed of each and every essential element

of the offense to which he confesses guilt. This require-
ment must be followed to the letter. I find the question
to be controlled by *Henderson v. Morgan* (1976), 426 U.S.
637, 49 L. Ed. 108, 96 S. Ct. 2253. In *Henderson,* the
defendant collaterally attacked his conviction, claiming
that his plea of guilty was involuntary because he had
never been informed that intent to cause death was a
necessary element of second-degree murder. The defendant
was indicted for first-degree murder after allegedly stab-
bing the owner of a farm on which he lived and worked.
The indictment charged that he "willfully" stabbed the
victim. Defendant tendered a plea of guilty to the lesser
included offense of murder in the second degree. Although
he was admonished as to the consequences of his guilty
plea, he was at no time informed that the intent to cause
the death of the victim was an element of the offense of
second-degree murder. At the sentencing hearing, the de-
fendant stated that he "meant no harm to that lady."

The Supreme Court accepted the prosecutor's asser-
tion that the evidence pointing to the guilt of the defend-
ant was overwhelming, yet stated:

> "Nevertheless, such a plea cannot support a judg-
> ment of guilt unless it was voluntary in a constitu-
> tional sense. And clearly the plea could not be
> voluntary in the sense that it constituted an in-
> telligent admission that he committed the offense
> unless the defendant received 'real notice of the
> true nature of the charge against him, the first and
> most universally recognized requirement of due
> process.' " (*Henderson v. Morgan* (1976), 426 U.S.
> 637, 644-45, 49 L. Ed. 2d 108, 114, 96 S. Ct.
> 2253, 2257.)

The court found that the failure of the court to inform
the defendant of the essential element of "intent to cause
death" deprived the accused of his constitutional right to
receive "real notice of the true nature of the charge against

him" and rendered his plea involuntary. The court reiterated:

> "There is nothing in this record that can serve as a substitute for either a finding after trial, or a voluntary admission, that respondent had the requisite intent. ***
>
> ***
>
> *** [I] t also forecloses the conclusion that the error was harmless beyond a reasonable doubt, for it lends at least a modicum of credibility to defense counsel's appraisal of the homicide as a manslaughter rather than a murder." (*Henderson v. Morgan* (1976), 426 U.S. 637, 646-47, 49 L. Ed. 2d 108, 115-16, 96 S. Ct. 2253, 2258-59.)

As a result, the court affirmed the district court's decision to set aside the guilty plea as it was involuntary and violated due process of law.

In the present case, the defendant was never informed by the court before his plea of guilty was accepted that the "intent to kill" was an essential element of attempted murder. He was informed of the nature of the charge against him by the reading of the indictment, which, as we have already stated, failed to contain the essential element of "intent to kill." Consequently, the defendant's plea, like that in *Henderson,* was involuntary, and the judgment of conviction was entered without due process of law. As in *Henderson,* too, the error cannot be claimed as harmless. The defendant was observed by police running from the scene of a recently reported crime. He was pursued by five police officers. The defendant, at the sentencing hearing, related his version of the transaction:

> "I started running. They were firing. They shot me four times. I turned around and fired. I don't know why I fired. They was firing at me, and I was hit. I just lost my head. *** I never had no intention of taking no one's life. I was just scared that night and trying to get away."

As in *Henderson,* the testimony of the defendant as to his state of mind at the time of the commission of the offense "lends at least a modicum of credibility" to his claim that he lacked the specific intent to kill. This error was not harmless and requires a reversal of his conviction.

The majority viewed the testimony of defendant protesting his lack of intent to kill as irrelevant in view of his decision to plead guilty and in view of the factual basis supporting such guilt. The majority cites *North Carolina v. Alford* (1970), 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160, for the proposition that a court may validly accept a plea of guilty from a defendant who simultaneously asserts his innocence. I believe that this case is inapposite, since in *Alford* the defendant knew all of the essential elements of the offense to which he pleaded guilty. Under the circumstances there the defendant could make an intelligent and informed decision to elect to plead guilty. Such a plea was obviously voluntary.

In the present case, the defendant did not know that the "intent to kill" was necessary to constitute the offense of attempted murder. Because he confessed to an offense without knowing that he must have intended to kill the victim, his plea admitted to nothing and was involuntary.

For the reasons stated, I would reverse.