THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LOUIS OWENS, Defendant-Appellant.

Second District    No. 80-611

Opinion filed August 20, 1981.

Jack Donahue, of Oak Brook, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Phyllis J. Perko and William L. Browers, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

In an indictment filed in the Circuit Court of Du Page County on November 29, 1979, the defendant, Louis Owens (along with two co-defendants) was charged with attempted murder, two counts of aggravated kidnapping, two counts of aggravated battery and three counts of armed violence in violation of the Criminal Code. (Ill. Rev. Stat. 1979, ch. 38, pars. 8—4, 10—2(a)(3), 10—2(a)(5), 12—4(c), 12—4(b)(1), 33A—2.) In pretrial orders the court ruled that the State could not proceed on the aggravated kidnapping counts since the actions charged in those counts occurred in Cook, not Du Page, County. Prior to trial, the State moved to proceed on only two of the three counts of armed violence. Following a jury trial, held on June 16-19, 1980, the defendant was convicted of aggravated battery, attempted murder, and armed violence. Subsequently, the defendant was sentenced, on the armed violence conviction, to 60 years imprisonment. He appeals.

Defendant was indicted in Du Page County for offenses which occurred on October 22, 1979. He had been indicted on November 5, 1979, in Cook County for crimes arising out of the same events. This indictment is not part of the record on appeal, but the defendant argues that the Cook County charges were for the offenses of armed violence, armed robbery, aggravated kidnapping, and aggravated battery.

Defendant made a motion to sever the prosecution of his case from

that of his co-defendants. This motion was granted. Defendant also made various pretrial motions: a motion to consolidate and transfer all matters to Cook County; a motion to suppress identification; and motions to suppress statements and evidence. These last two motions were denied.

At an April 21, 1980, hearing on all motions, the trial court ruled on the motion to consolidate and transfer. A written order was entered which stated that the State could proceed on count 1 only (attempted murder). But on June 16, 1980, the trial court clarified its order and stated that it intended that prosecution of only those events which occurred in Cook County would be barred. The State was allowed to proceed on all matters except the aggravated kidnapping counts and the armed violence count predicated thereon.

The trial court denied defendant's motion to suppress identification, finding that the motion was so vague and indefinite that no hearing was required. That motion stated that the victim, Filiberto Sanchez, after being shown eight photographs of which two depicted defendant, Louis Owens, and of which another two depicted co-defendant, Bert Owens, immediately identified the co-defendant. But the victim was unsure about his identification of defendant, Louis Owens, and requested the opportunity to view him in a lineup. The motion stated that it was unknown whether a subsequent lineup was conducted, and further stated that the eight photographs "may or may not have caused [the victim] to single out Louis Owens." The motion stated that this was alleged upon information and belief because the photographs had not been examined by the defense.

Prior to trial, the court ruled that the State could not show that defendant was charged with other offenses in Cook County which arose from the same transaction. The court further ruled that, while the State could show that defendant was arrested in South Dakota, it could not show that defendant was arrested for the theft of an automobile from a South Dakota woman. It was also the order of the court that no evidence of armed robbery be introduced, save the robbery of the victim's car keys.

At the trial of the cause, the victim, Filiberto Sanchez, testified that after he left a friend's home, he was involved in an auto accident with defendant and some others late on October 21, 1979. He decided to accompany the men to Cicero, Illinois, where they drank beer in a tavern. The victim stepped outside the tavern into an alley with a young lady with whom he had been dancing. In the alley, one of the men pulled a gun on him; another man took his car keys. Mr. Sanchez was ordered into the back seat of his own auto and was partially blindfolded. The car was driven for 30 to 40 minutes. Then the auto stopped and the victim got out into a field. He testified that someone other than defendant held the gun

on him. Mr. Sanchez was then ordered to disrobe and was struck twice in the head with the gun. He awoke in the field naked and bleeding from the stomach and head. Walking toward some lights, which were part of the steeple on a church, he jumped a fence with some difficulty and then spotted a police car and was rescued. On cross-examination, he stated that he may have walked one-half hour before reaching the fence.

Officer Anthony Coniglio of the Oakbrook Police Department testified that he found defendant at 5 a.m. on October 22, 1979, near 31st Street and York Road, which he stated was in Du Page County.

Testimony of various other witnesses related that a knife was recovered from a co-defendant. Mr. Sanchez's car was found parked in a corn field in Onawa, Iowa. It had been repainted black at a Chicago, Illinois, residential garage at which the defendant had been present. Two South Dakota police officers testified that they arrested defendant in that State in October 1979. An Assistant State's Attorney from Cook County, Gerald O'Keefe, testified to a statement made by defendant to him which implicated the defendant in this case.

No defense was presented. The jury returned guilty verdicts on all counts. Judgment was entered on the verdicts. Defendant moved for a new trial but this motion was denied on July 11, 1980. The trial court found that defendant's conduct was brutal and heinous and sentenced the defendant on the armed violence conviction to 60 years in the penitentiary. The convictions for attempted murder and aggravated battery were vacated as lesser included offenses. Defendant appeals.

I

Defendant first argues that the trial court erred in denying his pretrial motion to consolidate the Du Page County offenses with those charged in Cook County and to transfer venue to Cook County. The trial court allowed the State to proceed on counts 4, 5, 6, and 8. Counts 4 and 5 charged the offenses of aggravated battery, and counts 6 and 8 alleged armed violence based upon aggravated battery and attempted murder respectively. Defendant argues that because Cook County had previously indicted defendant for all charges for which defendant had been indicted in Du Page County, except attempted murder, Du Page County was precluded from prosecuting the counts based upon aggravated battery and armed violence. (It will be recalled that the trial court had previously ruled the State could not proceed on those counts of the indictment charging aggravated kidnapping.)

Defendant's argument is based upon *People v. Dillingham* (1969), 111 Ill. App. 2d 161, 249 N.E.2d 294, in which this court reversed a conviction for driving while license suspended in Du Page County where the

defendant had been previously convicted of the same charge in Kane County. The *Dillingham* court found that the crime charged was one continuing offense which was committed partly in one county and partly in another and stated: "the trial should have been only in the county first acquiring jurisdiction." (111 Ill. App. 2d 161, 166, 249 N.E.2d 294, 297.) Apparently defendant would have us hold that the offenses upon which counts 4, 5, 6, and 8 were based were continuing offenses like that in *Dillingham* and thus should have been tried in Cook County since it had previously indicted the defendant.

This argument assumes, first, that the offenses at issue were continuing offenses and, second, that the *Dillingham* court contemplated that "jurisdiction" could be acquired by a county merely by the bringing of an indictment. Both assumptions are unfounded. The charges which were the subject of the motion to consolidate occurred wholly in the field in Du Page County in which the victim was beaten and stabbed. The facts of *Dillingham*, in which it was held that the unlicensed driver committed one offense against the State albeit in two counties, are totally distinguishable on this basis alone.

■■■ Moreover, we believe that defendant reads *Dillingham* too broadly in asserting that indictment by Cook County would preclude Du Page County from prosecution of the same offenses. At issue in *Dillingham* was whether the subsequent prosecution constituted a successive trial for the same offense within the bar of statutory or constitutional provisions against double jeopardy. (111 Ill. App. 2d 161, 162-63, 249 N.E.2d 294, 295.) No statute or constitutional provision prohibits indictment of a defendant by more than one county for the same crime. Section 3—4 of the Criminal Code and Federal and State prohibitions against double jeopardy shield the defendant against the burden of multiple trials for the same offense. (Ill. Rev. Stat. 1979, ch. 38, par. 3—4; U.S. Const., amend. V; Ill. Const. 1970, art. I, §10.) Further, the trial court in its discretion may dismiss a redundant indictment upon consideration of all the circumstances of the case. If the rule were otherwise, indictment by a more precipitate prosecutor would preclude at the pretrial stage prosecution in a second county which, *e.g.*, was more likely to prove venue beyond a reasonable doubt. With these considerations in mind, we hold that the trial court properly allowed the State to proceed on these counts.

We now consider whether venue in Du Page County was proved beyond a reasonable doubt. The rule governing this issue was stated in *People v. Toellen* (1978), 66 Ill. App. 3d 967, 970, 384 N.E.2d 480, 482-83:

> "Every defendant has the right to be tried in the county in which the crime occurred; venue is the proof of that county. (*People v. Vaden* (1974), 25 Ill. App. 3d 187, 323 N.E.2d 18.) Venue is a

material element of the crime and must be proved beyond a reasonable doubt. (*People v. Piehl* (1972), 6 Ill. App. 3d 296, 285 N.E.2d 612.)"

■■ We find that venue in Du Page County was proved beyond a reasonable doubt. The victim could not affirmatively state that he was transported to a field *in Du Page County* where he was beaten and stabbed. But, Officer Coniglio testified that he found the victim in Du Page County and that photographs, which Mr. Sanchez stated depicted the spot at which he awoke, were of Du Page County locales. The venue of an offense may be proved by circumstantial evidence. *People v. Kucala* (1972), 7 Ill. App. 3d 1029, 288 N.E.2d 622.

*People v. Biella* (1940), 374 Ill. 87, 28 N.E.2d 111, to which we are referred by defendant, is distinguishable. The *Biella* court held that evidence that the post-mortem of the victim and the arrest of defendant occurred in Cook County was insufficient to prove venue there. But in that case, unlike ours, there was no evidence that the crime occurred in the challenged venue.

## II

■■■ Defendant's next argument is that the trial court erred in denying his pretrial motion to suppress the victim's in-court and out-of-court identification of defendant. The motion was denied without hearing, the trial court finding that it was too vague and indefinite to state an objection. We refuse to consider defendant's assertion because he waived its review by failing to include it in his post-trial motion. (*Wilson v. Clark* (1981), 84 Ill. 2d 186, 189, 417 N.E.2d 1322, 1324; *People v. Tannenbaum* (1980), 82 Ill. 2d 177, 181, 415 N.E.2d 1027, 1030; *People v. Pallardy* (1981), 93 Ill. App. 3d 725, 730, 417 N.E.2d 851, 853.) There was no plain error in the trial court's denial of the motion since the testimony of the victim indicated that his identification of defendant had a basis independent of any alleged suggestiveness in the photographic array. See *People v. McTush* (1980), 81 Ill. 2d 513, 410 N.E.2d 861.

## III

Defendant's third argument on appeal is that the armed violence statute, section 33A—2 of the Criminal Code (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2) is unconstitutional. Because the supreme court recently upheld the constitutionality of the armed violence statute, we reject this argument and affirm defendant's conviction on that count. *People v. Haron* (1981), 85 Ill. 2d 261, 422 N.E.2d 627.

## IV

Defendant next argues that the indictment failed to state the offense of attempt murder and of armed violence predicated upon attempt

murder because a material element of that crime was not alleged. The indictment stated that the defendant with the intent "to commit the offense of murder" performed a substantial step toward the commission of murder.

■■ We noted that defendant failed to object to the indictment at trial or in his post-trial motion. While the sufficiency of an indictment may be attacked for the first time on appeal, the standard in such a case is whether the indictment apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct. *People v. Gilmore* (1976), 63 Ill. 2d 23, 29, 344 N.E.2d 456, 460.

*People v. Trinkle* (1977), 68 Ill. 2d 198, 369 N.E.2d 888, reversed a conviction for attempted murder where the indictment alleged that defendant acted with knowledge of a probability of great bodily harm. Moreover, while the first instruction to the jury stated that a person commits attempt where he acts with "the intent to commit murder," the second and third jury charges communicated that mere knowledge of a probability of harm was the required mental state. The *Trinkle* court stated:

> "The contradiction between the instructions is patent. Only the first exacts the 'intent' to commit the crime of murder. The other two define the offense as performing an act with the knowledge that such 'created a strong possibility of death or great bodily harm.' The first is admittedly correct; it is at loggerheads with the other two." (68 Ill. 2d 198, 200, 369 N.E.2d 888, 890.)

The court went on to hold that to obtain a conviction for attempted murder, the indictment must charge a specific intent to commit the specific offense, and the jury must be accordingly instructed.

■■ Clearly, the indictment here meets the requirement of *Trinkle*. Indeed, the allegation of which defendant now complains, that defendant acted with "the intent to commit the offense of murder," was specifically approved in *Trinkle*. In any event, the Illinois Supreme Court has recently laid to rest any doubt of the meaning of *Trinkle* in *People v. Barker* (1980), 83 Ill. 2d 319, 415 N.E.2d 404. In that case the defendant challenged the sufficiency of an indictment identical to that before us and the court held that it complied with the requirements of section 8—4(a) of the Criminal Code (Ill. Rev. Stat. 1977, ch. 38, par. 8—4(a)), which defines attempt. *Barker* went on to state:

> "If the indictment had only charged the defendant with the intent to kill and did not include the allegation that the defendant acted with the intent to commit murder, it would have been defective under section 8—4(a) of the Criminal Code, quoted above, in that

it would not have charged the defendant with an intent to commit a specific offense. The act of killing, or even intending to kill, is not necessarily a criminal offense (self-defense, for example)." (83 Ill. 2d 319, 327, 415 N.E.2d 404, 407.)

Thus, defendant's argument is without merit.

## V

Defendant next contends that evidence of other offenses committed by him was erroneously admitted in contravention of the trial court's ruling on a motion *in limine*. He asserts that his motion for a mistrial should have been granted.

It would unduly lengthen this opinion to enumerate and analyze each of the many items in the record to which the defendant points as error.

It suffices to say that in many instances the defendant waived review of alleged improper comment and admission of evidence of other offenses by failing to object at the time of its admission into evidence. *People v. Driver* (1978), 62 Ill. App. 3d 847, 379 N.E.2d 840.

■■ Further the majority of the evidence and comment upon other crimes was not adduced, as defendant would have us believe, in contravention of the trial court's ruling on the motion *in limine*. The court's order was that evidence of other charges pending in South Dakota and in Cook County and evidence of the armed robbery of the victim's wallet could not be admitted. Most of the alleged errors recited by defendant was evidence of the fact that the victim's car keys were taken from him; that he was forced at gunpoint into his own car; that defendant was later seen in the vicinity of Mr. Sanchez's car; and that defendant was arrested in South Dakota shortly after the incident. Since evidence of other crimes is admissible to show motive, intent, or *res gestae* (*People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489; *People v. Campos* (1978), 60 Ill. App. 3d 36, 376 N.E.2d 405), testimony to these facts was properly adduced. Neither was it error to admit evidence of defendant's flight to South Dakota. *People v. Thomas* (1979), 72 Ill. App. 3d 28, 389 N.E.2d 1316.

■■ Defendant also objects to the admission of the testimony of Assistant State's Attorney Gerald O'Keefe. It is true that Mr. O'Keefe improperly mentioned the unrelated offenses of kidnapping and armed robbery but, as the State points out, the trial court sustained the defendant's objection and admonished the jury. Additionally, the trial court repeated the cautionary instruction at the conclusion of O'Keefe's testimony. Under these circumstances there was no reversible error. (See *People v. Martin* (1978), 59 Ill. App. 3d 785, 376 N.E.2d 65.) The remainder of Mr. O'Keefe's statements which concerned other offenses was clearly admis-

sible. (*McDonald*; *Campos*.) In conclusion, defendant's argument that the conviction must be reversed on this ground is without merit.

## VI

■■ We must now examine the instructions read to the jury on the issue of attempted murder. The crux of defendant's argument is that the jury charges erroneously led the jury to believe that a person could be found guilty of attempted murder via the accountability doctrine. In support of this conclusion defendant cites *People v. Kessler* (1973), 11. Ill. App. 3d 321, 296 N.E.2d 631, in which this court refused to impute the intent of one co-defendant to kill to another defendant to support a charge against the latter for attempted murder. But *Kessler* was reversed by the Illinois Supreme Court on precisely this point. *People v. Kessler* (1974), 57 Ill. 2d 493, 315 N.E.2d 29, held that the specific intent to kill could be imputed where the defendant was legally accountable for the conduct of another whose intent to kill was shown. Accord, *People v. Gregory* (1979), 73 Ill. App. 3d 127, 391 N.E.2d 779.

Since the instructions correctly apprised the jury of the law, we need not consider the effect of the fact that the trial judge had previously decided that No. 12 was incorrect and refused to accept it but then inadvertently read that charge to the jury.

## VII

Defendant also contends that he was not proved guilty of the offenses of attempted murder, aggravated battery, and armed violence. His argument appears to be based upon the fact that there was no direct evidence establishing that defendant beat or stabbed the victim. He further alleges that the attempted murder charge and the armed violence predicated thereon were not proved because the specific intent to kill may not be imputed.

■■ We find that there was sufficient evidence of defendant's guilt of all charges. Mr. O'Keefe testified that defendant told him that the group at the tavern had decided to steal from Mr. Sanchez and then felt it necessary to "get rid of" him. This was sufficient to show defendant's accountability for the acts of his cohorts. (Ill. Rev. Stat. 1979, ch. 38, par. 5—2(c).) It was not necessary for the State to prove that the defendant himself injured or attempted to kill the victim. Furthermore, *Kessler* and *Gregory* make clear that the specific intent to kill may be imputed to a defendant who is accountable for the acts of another.

## VIII

Finally, defendant argues that the trial court failed to consider his potential for rehabilitation in imposing the 60-year sentence. We are well

aware that both article I, section 11 of the Illinois Constitution of 1970, as well as section 1—1—2(d) of the Unified Code of Corrections, require that the rehabilitation potential of the accused in a felony case be considered in fixing sentence. (See *People v. Goodman* (1981), 98 Ill. App. 3d 743, 424 N.E.2d 663.) But we find the sentencing hearing was replete with references by the trial court to the defendant's rehabilitative potential, *e.g.*, "I must look at the manner in which you have conducted yourself not only on this occasion but on prior occasions to determine as to whether * * * you in fact can or might be rehabilitated and I would say based upon what's occurred in your life up until this point in time, that the chances are really very slim." We find that defendant's potential for restoration to useful citizenship was considered by the trial court in imposing sentence and, therefore, reject defendant's argument.

■■ Defendant also alleges that the trial court erroneously imposed the maximum term despite evidence that defendant's participation in the crime was "secondary." Section 5—8—2 of the Unified Code of Corrections provides that a sentence in excess of the maximum provided may not be imposed except where aggravating factors are found. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—2.) An extended term may be imposed where the trial court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. (*People v. Warfel* (1979), 67 Ill. App. 3d 620, 385 N.E.2d 175.) In the case at bar, the court did find that the crime of the defendant was accompanied by brutal and heinous behavior. In fashioning the 60-year sentence, the court strictly complied with the requirements of section 5—4—1 of the Code. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—4—1.) The court noted the defendant's past criminal behavior and stated its belief that defendant was the "ring-leader and instigator of a series of acts culminating in the strong-armed robbery of the victim, his being pistol whipped about the head, battered senseless, stabbed in the chest in close proximity to vital organs and critical blood vessels; disrobed; left naked, bleeding, and probably for dead in an open field on a chilly October evening." We also note the trial court's consideration of defendant's 43 years of age and past history of violent crime, including rape. There was no abuse of discretion in the imposition of the maximum term. See *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

Accordingly, the judgment of the Circuit Court of Du Page County is affirmed.

Affirmed.

SEIDENFELD, P. J., and REINHARD, J., concur.