*In re* C.K.G., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. C.K.G., a Minor, Respondent-Appellant).

Fourth District   No. 4—96—0854

Opinion filed October 8, 1997.

Daniel D. Yuhas and Arden J. Lang, both of State Appellate Defender's Office, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and Scott A. Manuel, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In May 1996, the State filed a petition for adjudication of wardship, alleging that respondent, C.K.G., who was then 15 years old, was a delinquent minor because he committed the offenses of unlawful possession of a firearm, unlawful use of weapons, and aggravated discharge of a firearm (720 ILCS 5/24—3.1(a)(1), 24—1(a)(10), 24—1.2(a)(2) (West 1994)). In June 1996, respondent, pursuant to an agree-

ment with the State, admitted and stipulated to the charge in the delinquency petition of aggravated discharge of a firearm. The trial court accepted respondent's admission and subsequently committed him to the Illinois Department of Corrections, Juvenile Division (DOC). Respondent appeals, arguing only that his admission to the charge of aggravated discharge of a firearm was not intelligently made because the prosecutor's misrepresentations led him to erroneously believe that a sufficient factual basis existed for the admission. We affirm.

## I. BACKGROUND

At the June 1996 hearing, the trial court admonished respondent substantially in accordance with Supreme Court Rule 402 (134 Ill. 2d R. 402) before accepting respondent's offer to admit to the charge of aggravated discharge of a firearm. That charge alleged that in May 1996, respondent "knowingly discharged a firearm in the direction of another person, specifically being Anwar Mitchell and Ty Johnson." The court read the charge to respondent to make sure he understood it, and respondent stated he did. The court also explained the possible consequences of his admitting to this charge. The court then asked the prosecutor to state a factual basis for the offer.

Because the factual basis as recited by the prosecutor—and respondent's remarks after the prosecutor completed his recitation—constitute the gist of this appeal, we quote at length from both, as follows:

"[Prosecutor]: Your Honor, May 21st of 1996 at about three fifty in the evening or afternoon, Bloomington police [went to a certain intersection] in Bloomington in response to a dispatch of shots fired. Upon their arrival, police initially talked to witnesses that described a verbal argument between two young males and two other males.

[The officers were told] two of the males then chased the other two males. Respondent minor was later identified as one of the two being chased. Respondent minor was then described as going into a residence, returning to that area, and *witnesses described the [respondent as] having *** an automatic pistol and then indicated that the minor pointed the pistol in the direction of the other two[,] who were later identified as Anwar Mitchell and Ty Johnson[,] who later when interviewed confirmed that they were the two that had been fired upon from across the street by the respondent minor.*

*After firing the shot, witnesses indicated the minor turned and ran down an alley in the area.* Bloomington officers later found a spent shell casing in the area [where] a witness had indicated the

minor had been standing when he fired that shot, identified as a brass twenty-two caliber shell casing that was spent and had been fired. Witnesses also led Bloomington officers to a residence, an apartment where the [respondent] had gone, and he was located and arrested without incident at that time. They were unable to locate or find the gun in the area or on or about the [respondent's] person.

The [respondent] gave a statement to the Bloomington detective *** where he described a verbal altercation with Anwar Mitchell and Ty Johnson. When asked why they were fighting the [respondent] told the detective that they didn't like each other and the other two individuals were members of the Gangster Disciples and he was a member of the rival Mickey Cobra gang.

As far as after the argument, the [respondent] stated that he ran to his house, grabbed a gun from his bunk bed, shot once just to scare them, and also indicated to the detective that *** he'd thrown that gun as he ran down the alley and told the detective that the gun was a black twenty-two automatic that he found in a field about a month before.

THE COURT: [Respondent], you've heard and understood I take it what the State's Attorney says about what happened here?

RESPONDENT: Yes, sir.

THE COURT: Any question about what he said?

RESPONDENT: No, sir.

THE COURT: *Do you agree that what he said is accurate and what happened?*

RESPONDENT: *No, sir.*

THE COURT: *What don't you agree with?*

RESPONDENT: *That I shot at them. I didn't shoot at them.*

THE COURT: [Defense counsel], do you want an opportunity to talk to your client here? That is an element of the offense here.

[Defense counsel]: Your Honor, the minor tells me that he shot into the ground in the general direction of Ty and Anwar.

[The court and counsel then conferred and agreed to amend the petition to refer to section 24—1.2(a)(2) of the Criminal Code of 1961 (Code) (720 ILCS 5/24—1.2(a)(2) (West 1994)), instead of section 24—1.2(a)(1) of the Code (720 ILCS 5/24—1.2(a)(1) (West 1994)).]

THE COURT: Subparagraph (2) of the statute says that a person commits aggravated discharge of a firearm when he knowingly or intentionally discharges a firearm in the direction of another person or in the direction of a vehicle he knows to be occupied.

[Mr. Prosecutor], are you satisfied with the acknowledgement of the minor as far as what occurred here as an amendment or differentiation from the description you gave of the factual situation here?

[Prosecutor]: Well, Your Honor, in fact I did research on the issue of what 'in the direction of' [means] and provided case law to counsel[.] *** [B]asically *** [the] legal interpretation is that *** 'pointed in the direction' [is] an issue for the trier of fact[,] as to whether or not pointing a gun at somebody and firing is 'in the direction of.' And I think case law supports that it is.

THE COURT: That his description of it would constitute that[,] you mean?

[Prosecutor]: Well[,] if it's believed, I think it would still mean that he would be technically guilty under the offense.

THE COURT: As [respondent] put it, he shot into the ground in the general direction of the two.

[Prosecutor]: Well[,] that is not consistent with what the witnesses would say ***.

THE COURT: Well[,] we can't leave it as an issue of fact[,] I guess[,] on a guilty plea. Either this is sufficient to satisfy the elements of the statute—

[Prosecutor]: Well no, I'm not going to agree that he shot that round into the ground. So—

THE COURT: Okay. You're satisfied as far as it satisfying the elements of the statute, how [respondent] has described the incident?

[Prosecutor]: Yes, I would say that that is fair to say." (Emphasis added.)

The trial court then appropriately admonished respondent further, consistent with Rule 402. The court ultimately accepted respondent's admission and committed him to DOC.

## II. ANALYSIS

Respondent argues that the factual basis the prosecutor stated in support of respondent's offer to admit was deficient because it did not support an essential element of the offense of aggravated discharge of a firearm, namely, that respondent aimed the firearm in the direction of another person before discharging it. He also argues that

"[t]he prosecutor misled [respondent] and the court into believing that the minor's actions constituted the offense of aggravated discharge of a firearm. Thus, because [respondent's] admission was not intelligently made, [respondent] was deprived of due process of law."

Specifically, respondent contends that the prosecutor affirmatively misled him and the court when the court asked the prosecutor if he agreed that respondent's description of his conduct—namely, that he "shot into the ground in the general direction of" the other young men but not at them—satisfied the elements of the statute and the prosecutor replied, "Yes, I would say that that is fair to say."

We reject respondent's argument because it fundamentally misconstrues the function and purpose of Rule 402's requirement that a factual basis be shown in support of either a guilty plea or an admission to a juvenile delinquency petition.

Initially, we note that we will analyze respondent's claims in the context of Rule 402. Although in *In re Beasley*, 66 Ill. 2d 385, 392, 362 N.E.2d 1024, 1027 (1977), the supreme court held that a trial court need not admonish a respondent in accordance with all of the provisions of Rule 402 before accepting his admission to a criminal charge as set forth in a juvenile delinquency petition, most trial courts—to be on the safe side—follow the commendable practice of tailoring their admonitions in accordance with Rule 402. By doing so, those courts ensure that a respondent so admonished cannot subsequently claim that the admonitions he received when the court accepted his offer to admit were so deficient as to deprive him of due process of law. See *Boykin v. Alabama*, 395 U.S. 238, 242, 23 L. Ed. 2d 274, 279, 89 S. Ct. 1709, 1711-12 (1969).

Considering respondent's claim in the context of Rule 402 will assist our analysis because (1) Rule 402 specifically addresses the requirement that the trial court determine a factual basis exists for a guilty plea; and (2) a substantial body of case law exists explaining what that requirement means. See 134 Ill. 2d R. 402(c). We conclude that the case law applicable to determining whether a factual basis has been shown to be in compliance with Rule 402(c) when an adult pleads guilty applies fully to a determination of whether a factual basis has been sufficiently shown when a respondent offers to admit to a criminal charge set forth in a juvenile delinquency petition.

On appeal, respondent addresses the requirement that a factual basis must exist for his admission as if the prosecutor somehow had to prove his case through his representations to the trial court. For instance, respondent argues that (1) "nothing in the record adequately supported the prosecutor's contention that [respondent] aimed and shot in the direction of Johnson and Mitchell"; and (2) "the evidence was insufficient that [respondent] arrived and shot in the direction of Johnson and Mitchell." He also complains of deficiencies in the prosecutor's stated factual basis, such as the following: (1) the bullet was never found; (2) the witness whom the prosecutor referred to as seeing the shooting "was never subject to cross-examination"; (3) the investigating officer merely recounted the witnesses' observations, "which could not be corroborated by making inferences from where the bullet was located"; (4) "importantly, there was no evidence as to where Johnson and Mitchell were standing when [respondent] shot"; and (5) "[i]f the [respondent's] shot was aimed just short of Johnson

and Mitchell and aimed into the ground, a jury could rationally have acquitted him of the offense of aggravated discharge of a firearm."

The problem with respondent's recitation of deficiencies in the State's case is twofold: (1) given that this proceeding was not a trial on the merits, the State's Attorney did not need to present all—or even most—of the evidence he possessed in support of respondent's guilt of the charge to which he was offering to admit; and (2) if respondent really believed the State's case was so deficient, he could have requested a trial on the merits. No one forced him to admit to the charge of aggravated discharge of a firearm as alleged in the delinquency petition. He did so because he liked the deal—at least, at the time—that he made with the State to dismiss other charges and to refrain from taking other actions—like seeking to prosecute respondent as an adult in criminal court.

■ In *People v. Barker*, 83 Ill. 2d 319, 327-28, 415 N.E.2d 404, 408 (1980), the supreme court addressed the quantum of proof necessary to establish a basis for a guilty plea and stated the following:

> "All that is required to appear on the record is a basis from which the judge could reasonably reach the conclusion that the defendant actually committed the acts with the intent (if any) required to constitute the offense to which the defendant is pleading guilty."

See also *People v. Royark*, 215 Ill. App. 3d 255, 270, 574 N.E.2d 1211, 1220 (1991) (in armed robbery case, all court need hear is basis from which it could reasonably conclude that defendant actually committed armed robbery); *People v. Smith*, 113 Ill. App. 3d 917, 924-25, 446 N.E.2d 876, 881 (1983) (when determining whether a factual basis exists, court need not "ferret out possible defenses for the defendant" and may accept a guilty plea even when the defendant maintains complete innocence); *People v. Bleitner*, 199 Ill. App. 3d 146, 151, 556 N.E.2d 819, 821 (1990) (trial court may accept a defendant's guilty plea despite his claim of innocence if the record otherwise reflects a factual basis); *People v. Chernetti*, 257 Ill. App. 3d 742, 745, 629 N.E.2d 229, 232 (1994) (factual basis may consist of a recital to the court of evidence that supports the allegations of the charge); *People v. James*, 233 Ill. App. 3d 963, 971, 599 N.E.2d 960, 966 (1992) ("requirement that the court determine the factual basis for the plea is satisfied *if there is a basis anywhere in the record* from which the court could reasonably reach the conclusion that the defendant actually committed the acts with the intent required to constitute the offense to which the defendant is pleading guilty" (emphasis added)).

Further, when, as here, a defendant on appeal challenges the sufficiency of the factual basis the prosecutor presented to the trial

court to support the defendant's guilty plea, the standard of review is whether the court abused its discretion by determining that a factual basis existed for the plea. *People v. Calva*, 256 Ill. App. 3d 865, 871, 628 N.E.2d 856, 861 (1993); *Barker*, 83 Ill. 2d at 333, 415 N.E.2d at 410. Judged by that standard, this record contains no basis whatsoever for concluding that the trial court abused its discretion when it determined that a factual basis existed for respondent's admission. The prosecutor had fully complied with Rule 402(c)'s requirement to state a factual basis when he described the scene of the shooting and spoke of a witness who said respondent had an automatic pistol and pointed it in the direction of the other two people, later identified as Mitchell and Johnson, who later confirmed that respondent had fired toward them from across the street.

■ We acknowledge that the requirements of Rule 402 constitute a floor, not a ceiling, regarding the admonitions a trial court must give to a defendant pleading guilty and the personal inquiries of the defendant the court must make. We also recognize that a trial court may ask additional questions before choosing—in the exercise of its discretion—whether to accept the defendant's guilty plea. Nevertheless, we suggest that trial courts that go beyond the requirements of Rule 402 do so by the use of an *informed* discretion—informed both by (1) an awareness that they need not do so, (2) a thoughtful consideration of what they hope to accomplish, and (3) an understanding of the difficulties that may arise as a result of their doing so. An example of the latter occurred in the present case, when the trial court asked respondent if he agreed that the prosecutor's recitation of the factual basis was "accurate in what happened." When respondent answered "no," the problems began.

■ Supreme Court Rule 402(c), *in its entirety*, reads as follows: "(c) **Determining Factual Basis for Plea.** The court shall not enter final judgment on a plea of guilty without first determining that there is a factual basis for the plea." 134 Ill. 2d R. 402(c). Paragraph (c) is but one part of a comprehensive scheme—Rule 402— promulgated over 25 years ago by the Supreme Court of Illinois to govern guilty pleas. The first part of that rule, in paragraph (a), requires the trial court (1) to explain four separate concepts to a defendant who is offering to plead guilty, (2) to do so by "*addressing the defendant personally in open court*," and (3) to then determine that the defendant understood what the court had just explained. (Emphasis added.) 134 Ill. 2d R. 402(a). Paragraph (b) of Rule 402 directs that the court may not accept the defendant's guilty plea without first determining that the plea is voluntary, and the court must do so—again—"*by questioning the defendant personally in open*

*court."* (Emphasis added.) 134 Ill. 2d R. 402(b). However, paragraph (c) of Rule 402, which directs the court to determine that a factual basis exists for the guilty plea, *does not require* the trial court to address the defendant personally in open court about any of the prosecutor's representations that purportedly constitute a factual basis.

This omission clearly was not an oversight by the Supreme Court of Illinois; instead, it reflected that court's considered judgment regarding the most appropriate, fair, and expeditious way of handling guilty pleas—which, we note, continue to be the primary vehicle by which the overwhelming majority of all criminal cases in this state are resolved. Thus, when trial courts engage in practices—or ask questions—during guilty plea proceedings that the supreme court chose not to include when it promulgated Rule 402, such courts ought to ask themselves, why?

■ For instance, in the case now before us, the trial court did not need to ask respondent personally if he agreed with the prosecutor's representations. To ensure that respondent—*through his counsel*—was given an opportunity to address the factual basis issue, all the court needed to do was address defense counsel essentially as follows: "Ms. defense counsel, do you agree that the prosecutor has witnesses who if called would testify substantially as indicated?" Assuming that defense counsel answers "yes," the court has fully complied with Rule 402(c). Respondent's disagreement with the prosecutor's representations constituted mere surplusage because it was totally beside the point—that is, respondent's stated disagreement did not challenge the State's ability to present witnesses who might testify as the prosecutor represented. Respondent's disagreement indicated merely that he might testify differently regarding the events than the State's potential witnesses.

Respondent's disagreement simply does not matter for purposes of Rule 402(c). If it did, the long line of cases could not exist which holds that a trial court may accept a defendant's offer to plead guilty even when the defendant maintains his innocence to the charge to which he is pleading guilty.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

KNECHT and COOK, JJ., concur.