2023 IL App (4th) 220405

NO. 4-22-0405

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 24, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| BRUCE A. MELVIN, | ) | No. 21CF94 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE DeARMOND delivered the judgment of the court, with opinion.

Justice Zenoff concurred in the judgment and opinion.
Justice Turner specially concurred, with opinion.

**OPINION**

¶ 1    In February 2022, defendant, Bruce A. Melvin, pleaded guilty to distribution of harmful material, a Class 4 felony (720 ILCS 5/11-21(g) (West 2020)), and sexual exploitation of a child, a Class A misdemeanor (720 ILCS 5/11-9.1(2) (West 2020)). The plea agreement provided defendant would receive a sentence of 18 months in the Illinois Department of Corrections (DOC) with credit for 303 days served in pretrial detention and no mandatory supervised release (MSR), which would run consecutively to defendant's sentence in case No. 19-CF-9 (10 years in DOC followed by 18 months' MSR). Defendant moved to withdraw his guilty plea when DOC calculated his credit for time served to be 199 days not 303. The trial court denied the motion. Defendant and DOC eventually resolved the discrepancy, and defendant received the credit for

303 days; nevertheless, defendant now challenges his convictions and sentence on different grounds.

¶ 2        On appeal, defendant raises four issues: (1) his sexual-exploitation-of-a-child conviction is void and must be vacated because the State's factual basis did not sufficiently establish "virtual presence"; (2) his convictions for distribution of harmful materials and sexual exploitation of a child violate the one-act, one-crime rule because they arise from a single act, so the lesser offense must be vacated; (3) the trial court erred in denying defendant's motion to withdraw his guilty plea because the State offered an inadequate factual basis for the plea and the court erroneously informed defendant he would not serve MSR; and (4) the court's written order certifying both convictions required defendant to register as a sex offender must be corrected because distribution of harmful materials does not require registration. We agree with defendant's final argument but otherwise affirm the court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4        In April 2021, by way of information, the State charged defendant with two counts: distribution of harmful material, a Class 4 felony (count I) (720 ILCS 5/11-21(g) (West 2020)), and sexual exploitation of a child, a Class A misdemeanor (count II) (720 ILCS 5/11-9.1(2) (West 2020)). The charges arose from an exchange defendant had on Facebook with an account named "Brit Mae," on March 10, 2021. Believing (and confirming) he was communicating with a 16-year-old female, defendant engaged "Brit Mae" in a lecherous conversation and sent her "four pictures depicting himself[ ] [in] various stages of undress in a mirror." He took and sent the pictures with a cell phone, and each picture displayed defendant's penis, which was sometimes erect or sometimes in his hand. Count I specifically alleged "defendant exhibited to a person he believed to be a minor, photographs, which taken as a whole, is harmful to minors and

manufactured said photographs by use of [a] cellular phone." Count II alleged "defendant, in the virtual presence of and with knowledge that a child or one whom he or she believed to be a child would view his act, *** exposed his penis, for the purpose of sexual gratification or arousal of such person or one whom he believes to be a child."

¶ 5        Defendant and the State entered into a plea agreement and presented it to the trial court in a February 24, 2022, hearing. Addressing defendant directly, the court asked if he had any complaints about his attorney in this case, and defendant answered no. The court confirmed defendant discussed the guilty plea with his attorney, which he did. The court then summarized the plea, stating:

> "And my understanding is you are pleading guilty today to Count 1. That is a Class 4 felony distribution of harmful material. And Count 2 is a Class A misdemeanor sexual exploitation of a child.
>
> And in exchange for pleading guilty to those two charges, you have agreed to a term of one and a half years in [DOC]. There would be no MSR on that because it's the Class 4 felony, I guess a conviction on Count 2. That will run consecutive to the sentence you are currently serving in 19-CF-9, and you have credit for 303 days served. So I think basically as far as this case goes it would be kind of an in and out kind of thing by the time you get your good time and all that with your 303 days and then the other six month good conduct credit."

The court then noted defendant would "have to register as a sex offender" based on count II, the sexual exploitation of a child. The court tasked the parties with determining whether count I would also require defendant to register, and both eventually indicated they believed it would.

¶ 6          The trial court next advised defendant of the rights he was waiving by entering into a plea agreement, informed him of the penalty range, and confirmed defendant entered his guilty plea knowingly and voluntarily. After defendant stated he still wished to plead guilty, the court asked for a factual basis and the State offered the following:

> "On March 10th 2021, this Defendant was privately messaging a Facebook page titled Brit Mae. This is a page operated by the Livingston County Proactive Unit and purported to be an underage female.
>
> In the conversation, it was confirmed that this minor the Defendant was talking to was 16 years old. Lewd conversations ensued wherein this Defendant did send four photos. These photos depicted him in stages of undress including with his penis showing as well as with his penis within a hand as well as a picture containing both his undressed self as well as his face."

Defense counsel stipulated to the factual basis, saying "if this case were to proceed to trial the State would be able to produce witnesses and evidence to substantially support the allegations." The court found a factual basis for the plea, accepted defendant's guilty plea, and sentenced him according to the parties' agreement. The court's written judgment set defendant's sentence on count I (distribution of harmful material) as 18 months in DOC with credit for 303 days served to be served consecutive to his sentence in case No. 19-CF-9. The court issued an order and certification of defendant as a sex offender, which noted "[d]efendant has been convicted of the following felony [and misdemeanor] offense(s) as described in 730 ILCS 150/2: Distribution [of] Harmful Material (Class 4) and sexual exploitation of [a] child (Class A)."

¶ 7          On March 25, 2022, defendant filed a *pro se* motion to withdraw guilty plea, claiming he was "not being given the benefit of the deal [he] entered [into] with the judge, [his]

lawyer, and the State, as IDOC refuses to recognize the days awarded in the judgment order to IDOC." The trial court entered a modified judgment withdrawing the dates for time-served, but it did not affect DOC's calculation for defendant's credit time. A month later, defense counsel filed a motion to withdraw guilty plea and vacate the judgment. It incorporated defendant's *pro se* motion but also alleged defendant "believes he is innocent of the charges against him, and wishes to proceed to trial." In a May 16, 2022, hearing, the parties argued defense counsel's motion and focused solely on DOC's calculation of defendant's time credit. The court denied the motion, finding the calculation of a defendant's "outdate" and time credit falls to DOC "and that's certainly not a basis to withdraw a plea of guilty."

¶ 8        This appeal followed.

¶ 9                              II. ANALYSIS

¶ 10        Defendant challenges his convictions and sentence on four grounds: (1) his conviction for sexual exploitation of a child is void and must be vacated because the State's factual basis did not (and cannot) establish "virtual presence" as a matter of law; (2) his convictions arise from a single act (sending photos) and, therefore, violate the one-act, one-crime rule, which means the conviction for sexual exploitation of a child must be vacated since it is the lesser offense; (3) alternatively, the trial court should have granted defendant's motion to withdraw guilty plea because the factual basis failed to establish an offense occurred and the court misinformed defendant about MSR; and (4) since the distribution-of-harmful-material offense does not require defendant to register as a sex offender, the court's certification should be corrected. We will take each issue in turn.

¶ 11        We pause to note defendant forfeited these issues for appeal because he did not raise them contemporaneously, nor did he raise them in his motions to withdraw the guilty plea.

*People v. Wishard*, 396 Ill. App. 3d 283, 286, 919 N.E.2d 1118, 1120 (2009); *People v. Kiefel*, 2013 IL App (3d) 110402, ¶ 16, 986 N.E.2d 1232. But forfeiture binds only the parties, not the reviewing court. See *People v. Jackson*, 2017 IL App (1st) 151779, ¶ 20, 91 N.E.3d 472. Indeed, we may review an unpreserved error for plain error in certain circumstances. *People v. Thompson*, 238 Ill. 2d 598, 613, 939 N.E.2d 403, 412 (2010) (citing *People v. Averett*, 237 Ill. 2d 1, 18, 927 N.E.2d 1191, 1201 (2010)). Defendant believes his circumstances warrant plain-error analysis. "In plain-error review, the burden of persuasion rests with the defendant." *Thompson*, 238 Ill. 2d at 613. We will apply the plain-error doctrine when the defendant makes one of the following showings:

> "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." (Internal quotation marks omitted.) *Thompson*, 238 Ill. 2d at 613.

Defendant here argues only second-prong plain error—the various errors he alleges are sufficiently serious to undermine the fairness and integrity of the guilty plea proceedings. The threshold step in plain-error review is whether a clear or obvious error occurred. *People v. Walker*, 232 Ill. 2d 113, 124-25, 902 N.E.2d 691, 697 (2009).

¶ 12 A. Sexual Exploitation of a Child Conviction

¶ 13 Defendant challenges his conviction for sexual exploitation on several grounds, arguing it must be vacated based on voidness, second-prong plain error, and ineffective assistance of counsel. Defendant's argument centers upon the State's factual basis for the guilty plea. Specifically, he contends the proffered factual basis failed to establish "virtual presence" as a matter of law, citing our recent decision in *People v. White*, 2021 IL App (4th) 200354, 185 N.E.3d 712.

¶ 14 *White* involved a high school track coach who sent pictures of her breasts to a 16-year-old student via Snapchat, what we described as "a multimedia messaging app." *White*, 2021 IL App (4th) 200354, ¶ 5. In a bench trial, the State presented evidence of the 11 photos and testimony from the victim, who the parties (and then this court) relied upon to describe Snapchat's processes and purpose. *White*, 2021 IL App (4th) 200354, ¶¶ 5-6, 16-20. The victim testified White sent him digital still images, and he noted "there was no conversation between himself and [White] at the time she sent him the pictures." *White*, 2021 IL App (4th) 200354, ¶¶ 8-9. The court found White guilty of sexual exploitation of a child, and she appealed, arguing the "undisputed facts fail to meet the statutory description of" the offense, particularly "she denie[d] that she committed this act of exposure in the 'virtual presence' of [the victim]." *White*, 2021 IL App (4th) 200354, ¶ 11.

¶ 15 Presence—either actual presence or "virtual presence"—is a necessary element in proving a person guilty of sexual exploitation of a child. 720 ILCS 5/11-9.1(a) (West 2020). Put simply, a person must do the prohibited acts in the presence or virtual presence of a child. Section 11-9.1(b) of the Criminal Code of 2012 (Code) (720 ILCS 5/11-9.1(b) (West 2020)) defines "virtual presence" accordingly:

> " 'Virtual presence' means an environment that is created
> with software and presented to the user and or receiver via the

Internet, in such a way that the user appears in front of the receiver on the computer monitor or screen or hand-held portable electronic device, usually through a web camming program. 'Virtual presence' includes primarily experiencing through sight or sound, or both, a video image that can be explored interactively at a personal computer or hand-held communication device or both.

'Webcam' means a video capturing device connected to a computer or computer network that is designed to take digital photographs or live or recorded video which allows for the live transmission to an end user over the Internet."

*White* called on us to apply these definitions to that particular fact pattern, and we expounded upon them exhaustively, if not exhaustingly. Viewing only the Code's definition, we observed "the legislature ha[d] in mind a computer artifice that apes physical presence: a webcam video or something like it." *White*, 2021 IL App (4th) 200354, ¶ 16. This observation led us to surmise that "[t]o meet the description of '[v]irtual presence,' the software has to 'create[ ]' a you-could-be-there 'environment.' " (Internal quotation marks omitted.) *White*, 2021 IL App (4th) 200354, ¶ 16. Applying this supposition, we concluded: "The still images that [White] texted to [the victim] did not create an 'environment' of virtual presence in any meaningful sense of the term. [Citation.] They were merely the digital equivalents of Polaroids, only more ephemeral. They were not calculated to create the illusion of physical presence." *White*, 2021 IL App (4th) 200354, ¶ 17. We ultimately reversed White's conviction for sexual exploitation of a child, holding "[t]he statutory element of 'virtual presence' [was], as a matter of law, unproven." *White*, 2021 IL App (4th) 200354, ¶ 22.

¶ 16    Believing *White* announced a sweeping legal principle that sending still digital photographs through a messaging app can never establish "virtual presence," defendant reasons the State's factual basis was fatally flawed and could not establish "virtual presence," since it alleged defendant sent photographs via Facebook. Defendant maintains, "*White* controls here, as the facts of the two cases are almost indistinguishable." Indeed, he deems *White* "a functionally identical set of facts *** [applied] to the same statute." It is true the two cases involve an adult sending photos to a minor through a messaging app and both implicate the same statute, but the similarities end there. The facts and procedural posture are quite different.

¶ 17    Taking the procedural differences first, we note this case presents to us in the posture of defendant appealing his conviction following a guilty plea, not a trial. This means we do not have the benefit of a developed record like we had in *White*. We might have had the transcript of defendant and Brit Mae's conversation and the photos, but defendant failed to provide them. As the appellant, he shoulders the burden for ensuring we have a complete record. *People v. Hillis*, 2016 IL App (4th) 150703, ¶ 107, 65 N.E.3d 357 ("A party who would appeal must ensure the record is clear and ample enough to substantiate the claims of error he or she intends to raise in the appeal."). We have a factual basis for the offense, not evidence that has passed through adversarial testing and been admitted by a judge. See *People v. Bassette*, 391 Ill. App. 3d 453, 456-57, 908 N.E.2d 1062, 1064-65 (2009). A factual basis serves a limited purpose—ensuring defendants do not plead guilty to crimes they did not commit. *People ex rel. Daley v. Suria*, 112 Ill. 2d 26, 32, 490 N.E.2d 1288, 1290 (1986). It is not a substitute for a trial and proof beyond a reasonable doubt. *Bassette*, 391 Ill. App. 3d at 456. In accepting a factual basis for a guilty plea, a trial court is concluding the alleged facts indicate the defendant actually committed the necessary acts that constitute the charged offense. *People v. Barker*, 83 Ill. 2d 319, 327, 415 N.E.2d 404, 408

(1980). More importantly, unlike White, by stipulating to the State's factual basis and then pleading guilty, defendant admitted he committed every element of sexual exploitation of a child. He admitted exposing his penis in the virtual presence of Brit Mae.

¶ 18    Turning next to the differing facts, *White* involved sending pictures only—there was no conversation between White and her victim, whereas this case involved defendant engaging the victim in a lewd conversation and sending photographs showing his penis (sometimes in his hand, sometimes erect) as part of that exchange. This distinction removes this case from *White*'s orbit, as it relates to the question of whether there was virtual presence. It requires this court to consider and apply the Code's definition for "virtual presence" to these particular facts, keeping in mind the court is not an expert in the field of technology and must use common sense.

¶ 19    Recall, " '[v]irtual presence' means an environment that is created with software and presented to the user or receiver via the Internet, in such a way that the user appears in front of the receiver on a computer monitor or screen or hand-held portable electronic device, usually through a web camming program." 720 ILCS 5/11-9.1(b) (West 2020). And " '[w]ebcam' means a video capturing device connected to a computer or computer network that is designed to take digital photographs or live or recorded video which allows for the live transmission to an end user over the Internet." 720 ILCS 5/11-9.1(b) (West 2020). Applying these statutory definitions to the limited facts before us, we conclude the factual basis established the virtual presence element for defendant's sexual exploitation of a child conviction. By using a cell phone camera (a video capturing device connected to a computer, *i.e.*, a type of webcam) to take digital photographs of himself (and his penis) and transmitting those images to Brit Mae during an ongoing conversation via Facebook (an Internet program), defendant created an environment where he (and his penis) appeared in front of her. Presumably, Brit Mae could explore those photos interactively, since they

were not ephemeral images like those in *White*. We must conclude since defendant entered a knowing and voluntary plea to the offense as charged, and stipulated, in open court, to the State's ability to prove it, he acknowledged his "virtual presence."

¶ 20    We emphasize, again, we have limited facts and a limited record due to the case coming before us on an appeal from a guilty plea and defendant's failure to present us with a fully developed record. The inadequacy of the record leaves us unable to determine whether the photos were taken during the conversation itself and sent contemporaneously, or not, a fact that would lend even greater weight to a finding of "virtual presence." Digital still images sent in the context of an ongoing lewd conversation can create a different environment than digital pictures sent without context or without ongoing communication. Defendant's simplified argument that " 'virtual presence' requires more than mere text messaging and the exchange of still photographs; [because] it means a 'you-had-to-be-there environment' such as that created by the videoconferencing app Zoom," most assuredly stems from our *White* opinion. While we remain confident we arrived at the right conclusion in *White*, our explanatory examples and comparisons may have oversimplified what can be a complex, fact-sensitive determination.

¶ 21    Because *White* does not control here, and because we find the factual basis adequately supported the virtual-presence element for the offense of sexual exploitation of a child, we need not address defendant's voidness argument. Though we do observe the two cases defendant cited for his voidness claim, *People v. McCarty*, 94 Ill. 2d 28, 445 N.E.2d 298 (1983) and *People v. Kayer*, 2013 IL App (4th) 120028, 998 N.E.2d 1097, are inapt because they involved both a faulty charging instrument *plus* an inadequate factual basis. Defendant does not challenge the charging information here, and rightly so because the State properly alleged the virtual-presence element in the information alleging sexual exploitation of child. Finally, because

there is no clear, obvious error regarding the factual basis, we need not consider defendant's second-prong-plain-error or ineffective-assistance-of-counsel arguments. See *Walker*, 232 Ill. 2d at 124-25 (finding a clear, obvious error is the threshold determination in a plain-error analysis); see also *People v. Jaimes*, 2019 IL App (1st) 142736, ¶ 58, 130 N.E.3d 502 (stating principle that where there is no plain error, there can be no ineffective assistance of counsel).

¶ 22                               B. One-Act, One-Crime Rule

¶ 23        Defendant next alleges his two convictions arise from one single act, which violates the one-act, one-crime rule, and, consequently, the lesser offense (sexual exploitation of child) must be vacated. He recognizes he must prove plain error here, and he notes we have previously held a one-act, one-crime rule violation satisfies second-prong plain error. *People v. Price*, 2011 IL App (4th) 100311, ¶ 25. However, we find no clear and obvious error to warrant plain-error review for this issue.

¶ 24        Illinois law's one-act, one-crime rule provides "that a criminal may not be convicted of multiple offenses when those offenses are all based on precisely the same physical act." *People v. Stull*, 2014 IL App (4th) 120704, ¶ 42, 5 N.E.3d 328 (citing *People v. King*, 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844 (1977)). A one-act, one-crime rule analysis involves two inquiries, specifically:

> " '[A] court first determines whether a defendant's conduct
> consisted of separate acts or a single physical act. Multiple
> convictions are improper if they are based on precisely the same
> physical act. [Citations.] If the court determines that the defendant
> committed multiple acts, the court then goes on to determine
> whether any of the offenses are lesser[-]included offenses.

> [Citations.] If so, then, *** multiple convictions are improper; if not,
> then multiple convictions may be entered.' " *Stull*, 2014 IL App
> (4th) 120704, ¶ 42 (quoting *People v. Rodriguez*, 169 Ill. 2d 183,
> 186, 661 N.E.2d 305, 306-07 (1996)).

Alleged one-act, one-crime violations present legal issues we review *de novo*. *Stull*, 2014 IL App (4th) 120704, ¶ 43.

¶ 25    Defendant's argument here focuses solely upon the same-physical-act element. Our supreme court "defined 'act' as 'any overt or outward manifestation which will support a different offense.' " *Price*, 2011 IL App (4th) 100311, ¶ 26 (quoting *King*, 66 Ill. 2d at 566). He contends his convictions for distribution of harmful material and sexual exploitation of a child were based on the same physical act—sending pictures of his penis. Defendant maintains: "At the moment before [he] transmitted the photos of his penis, he had committed no crime." Again, defendant oversimplifies the issue. While it is true defendant's two crimes both involve sending a picture with a cell phone, one offense required more. As we explained above, his sexual-exploitation-of-a-child conviction required "virtual presence," which is more than merely sending a photograph of his penis (as defendant vigorously argued above). The record confirms defendant engaged Brit Mae in private lewd conversations on Facebook during which he sent four pictures of himself in stages of undress and showing his penis. The conversation amounted to a separate act—it was an "overt, outward manifestation." See *Price*, 2011 IL App (4th) 100311, ¶ 26. Both the acts of a lewd conversation and sending at least one picture of his penis were necessary for virtual presence, which, in turn, was necessary for the sexual-exploitation-of-a-child offense. 720 ILCS 5/11-9.1(a) (West 2020). "Virtual presence" is not required for distribution of harmful materials. 720 ILCS 5/11-21(g) (West 2020). Consequently, defendant's private lecherous

conversation with Brit Mae through Facebook constituted an "overt or outward manifestation \*\*\* support[ing] a different offense." *Price*, 2011 IL App (4th) 100311, ¶ 26. We cannot conclude defendant's two convictions were based on precisely the same physical act.

¶ 26    Defendant cited *People v. Crespo*, 203 Ill. 2d 335, 788 N.E.2d 1117 (2001), as an instructive, if not analogous case. There the State charged the defendant with two counts of aggravated battery (one count causing great bodily harm and the second count using a deadly weapon) along with one count of armed violence based on the fact he stabbed his victim three times. Neither the charging instruments nor the State's evidence at trial apportioned the stabbings to a particular offense. Indeed, the State treated the stabbings as a single attack. When defendant appealed, alleging a one-act, one-crime violation and arguing the crimes arose from the same physical act (stabbing), the supreme court agreed and reversed the aggravated battery conviction. The court observed: "Nowhere in the[ ] charges [did] the State attempt to apportion these offenses among the various stab wounds." *Crespo*, 203 Ill. 2d at 343. The court explained the State *could have* apportioned the stab wounds to each offense in the charging information and at trial. But since the State did not do that, the supreme court found it would be "profoundly unfair" to allow the State to apportion the stab wounds to the crimes on appeal. *Crespo*, 203 Ill. 2d at 344. Here, invoking *Crespo*, defendant argues the State could have apportioned the photographs to particular offenses but did not and cannot do it now. But apportionment is not the issue here since both offenses did not require sending photos only. As we noted above, the lewd conversation was a separate, overt act required for the sexual-exploitation-of-a-child offense. The State properly apportioned that act in the charging information by alleging "virtual presence." *Crespo*, therefore, is not instructive here.

¶ 27 Apparently convinced he satisfied the single-act inquiry, defendant made no argument as to whether one of his convictions constituted a lesser-included offense for the other. For this inquiry, we must take the abstract elements approach, which involves the following:

> " 'a comparison is made of the statutory elements of the two offenses. If all of the elements of one offense are included within a second offense and the first offense contains no element not included in the second offense, the first offense is deemed a lesser-included offense of the second. [Citations.]' " *Stull*, 2014 IL App (4th) 120704, ¶ 63 (quoting *People v. Miller*, 238 Ill. 2d 161, 167, 938 N.E.2d 498, 505 (2010)).

This is a "strict[ ] approach in the sense that it is formulaic and rigid," meaning "it must be impossible to commit the greater offense without necessarily committing the lesser offense." *Stull*, 2014 IL App (4th) 120704, ¶ 63 (quoting *Miller*, 238 Ill. 2d at 166). As we explained (*supra* ¶¶ 13-21), the Class A misdemeanor offense of sexual-exploitation-of-a-child requires the virtual presence element, which is not an element for Class 4 felony distribution of harmful materials. One could commit distribution of harmful materials by sending nude pictures to a child without necessarily committing sexual exploitation of a child. We, therefore, cannot conclude sexual exploitation of a child constituted a lesser-included offense for distribution of harmful materials. Consequently, we find no one-act, one-crime violation here.

¶ 28                                    C. Motion to Withdraw Guilty Plea

¶ 29 Defendant next alleges the trial court erred in denying his motion to withdraw the guilty plea because the State failed to provide a sufficient factual basis and the court errantly informed him there would be no MSR for this conviction. Again, we note defendant did not raise

these issues in his motions to withdraw the guilty plea and bears the burden of proving plain error. We find he did not meet that burden because we see no clear, obvious errors. See *Walker*, 232 Ill. 2d at 124-25.

¶ 30                                             1. *Adequate Factual Basis*

¶ 31          Illinois Supreme Court Rule 402(c) (eff. July 1, 2012) provides: "The court shall not enter final judgment on a plea of guilty without first determining that there is a factual basis for the plea." A trial court satisfies Rule 402(c)'s requirement " '*if there is a basis anywhere in the record* from which the court could reasonably reach the conclusion that the defendant actually committed the acts with the intent required to constitute the offense to which the defendant is pleading guilty.' " (Emphasis in original.) *In re C.K.G.*, 292 Ill. App. 3d 370, 376, 685 N.E.2d 1032, 1036 (1997) (quoting *People v. James*, 233 Ill. App. 3d 963, 971, 599 N.E.2d 969, 966 (1992)).

¶ 32          Defendant argues his motion to withdraw the guilty plea should have been granted because there was no factual basis for the sexual-exploitation-of-a-child guilty plea. As before, he bases this argument on his view that the State's factual basis did not and cannot support the offense of sexual-exploitation-of-a-child count because *White* held that texting still digital photographs can never establish "virtual presence." Besides broadening *White*'s holding, defendant misunderstands what amounts to an adequate factual basis for a guilty plea.

¶ 33          The State's factual basis sufficiently indicated defendant committed acts satisfying every element for sexual exploitation of a child, including virtual presence. The factual basis noted "Defendant was privately messaging a Facebook page titled Brit Mae," those messages amounted to "lewd conversations" with her, and during which he sent her four photos "depict[ing] him in stages of undress including with his penis showing as well as with his penis within a hand as well

as a picture containing both his undressed self as well as his face." In offering this factual basis, the State "did not need to present all—or even most—of the evidence [it] possessed in support of [defendant's] guilt of the charge to which he was offering to admit." *Bassette*, 391 Ill. App. 3d at 456. It needed to provide just enough information for the court to determine defendant committed the acts necessary for sexual exploitation of a child. See *C.K.G.*, 292 Ill. App. 3d at 376. Perhaps the State's case-in-chief would have identified certain messages and linked them, either by time stamp or context, to each photo to establish virtual presence beyond a reasonable doubt, but by pleading guilty, defendant did not hold the State to that burden. Based upon the statutory definition, a defendant can create "virtual presence" by communicating with a person via the Internet and taking or sending digital photographs via a cell phone so he appears before the receiver on a screen and the receiver experiences the video image through sight or sound or both and can explore the image. 720 ILCS 5/11-9.1(b) (West 2020). The factual basis, albeit barebones, sufficiently satisfies this definition and supports defendant's guilty plea. There was no Rule 402(c) violation here. The trial court rightly denied defendant's motion to withdraw his guilty plea.

¶ 34                                    2. *MSR Eligibility*

¶ 35            Defendant next contends he should have been allowed to withdraw his guilty plea because the trial court errantly told him his sentence would contain no MSR. Rule 402(a)(2) provides, in part: "The court shall not accept a plea of guilty *** without first, by addressing the defendant personally in open court, informing him or her of and determining that he or she understands *** the minimum and maximum sentence prescribed by law." Ill. S. Ct. R. 402(a)(2) (eff. July 1, 2012). Defendant's negotiated plea provided he would be sentenced to 18 months in DOC and no MSR on the Class 4 felony distribution of harmful material. When admonishing defendant about the plea, the court restated the plea's terms, including "[t]here would be no MSR

on that because it's the Class 4 felony." The court and the parties mistakenly believed there would be no MSR for the Class 4 felony because the Illinois General Assembly had amended section 5-8-1 of the Unified Code of Corrections (730 ILCS 5/5-8-1 (West 2020)) to change MSR terms and, as relevant here, eliminate MSR for a Class 4 felony, as of July 1, 2021. Pub. Act 101-652, § 10-281 (eff. July 1, 2021) (amending 730 ILCS 5/5-8-1). But the General Assembly twice delayed the effective date for the changes to January 1, 2022, and then to July 1, 2022. See Pub. Act 101-28, § 65 (eff. June 25, 2021) (amending 730 ILCS 5/5-8-1); Pub. Act 102-694, § 35 (eff. Jan. 7, 2022) (amending 730 ILCS 5/5-8-1). Even though the court misspoke and errantly noted zero MSR on the written sentencing order, defendant should have received one year MSR for the Class 4 felony distribution of harmful material to a minor. Based on the briefing, we surmise no change has been made to the court's sentencing order adding MSR to defendant's sentence.

¶ 36     Defendant, nevertheless, fears the State will enforce MSR and now claims he "should not be held to a guilty plea in which he bargained for a specific sentence, but will receive a greater punishment than agreed." He labels this a due process violation or a Rule 402(a) violation. We disagree. Contrary to defendant's claim, he is getting the benefit of his bargain—no MSR for this matter.

¶ 37     Defendant's sentence in this case runs consecutively to his sentence in case No. 19-CF-9—10 years in DOC followed by 18 months MSR—for Class X unlawful possession of heroin with intent to deliver. He has not challenged that sentence. "When a defendant receives consecutive sentences for multiple felonies, these sentences are treated as a single term, and the defendant serves the MSR term corresponding to the most serious offense." *People v. Jackson*, 231 Ill. 2d 223, 227, 897 N.E.2d 752, 755 (2008); see 730 ILCS 5/5-8-4(g) (West 2016). For practical, sequential purposes, the defendant serves "*all* consecutive prison terms and *then* serve[s]

- 18 -

the MSR term for the most serious offense." (Emphases added.) *Round v. Lamb*, 2017 IL 122271, ¶ 20, 90 N.E.3d 432 (citing 730 ILCS 5/5-8-4(g) (West 2016)). Defendant's most serious offense is the Class X felony, which carries the 18-month MSR term. This means defendant must serve his prison terms, 10 years for case No. 19-CF-9 and 18 months for case No. 21-CF-94, *and then* serve only the 18-month MSR term—something he never challenged. Even if the State sought to correct the sentencing order to add the MSR term or if the MSR automatically attached to defendant's sentence in case No. 21-CF-94, he would not serve that term because he would have to serve the MSR for his most serious offense—the Class X drug offense.

¶ 38        Our supreme court addressed a nearly identical issue in *Jackson*. There, the defendant, who was already incarcerated for robbery, pleaded guilty to multiple counts of aggravated battery in two different cases. Though the trial court admonished the defendant about the penalty range (including MSR), neither the written plea agreements nor the sentencing orders referred to MSR. *Jackson*, 231 Ill. 2d at 224. Defendant attacked his guilty pleas in a postconviction petition, "alleging that he was deprived of due process because he was never advised of MSR." *Jackson*, 231 Ill. 2d at 224. Citing the Unified Code of Corrections, the court noted the defendant would have to serve the MSR for the most serious offense and identified the defendant's most serious offense as Class 2 felony robbery. The court concluded: "Thus, the MSR term that the defendant is serving corresponds to his robbery conviction, and the MSR term that he is challenging corresponds to his aggravated battery convictions. In short, the defendant attacks an MSR term that never will be served." *Jackson*, 231 Ill. 2d at 227. The court dismissed defendant's appeal as moot since it could not provide effective relief. *Jackson*, 231 Ill. 2d at 228.

¶ 39        Though we cannot dismiss defendant's entire appeal as moot, we still cannot provide defendant any effective relief on this particular issue. Assuming his sentence for case No.

21-CF-94 includes mandatory MSR, he will never serve it. The trial court misspoke by saying there would be no MSR for a Class 4 felony, yet it still relayed the actual sentence defendant would serve consecutive to his other sentence. Defendant is getting the benefit of his bargain.

¶ 40                                    D. Sex Offender Registry

¶ 41            Finally, defendant argues the trial court erred by including his conviction for distribution of harmful material on the order certifying him as a sex offender because it is not a sex offense under the Sex Offender Registration Act (730 ILCS 150/2(B) (West 2020)). He argues we "should correct the certification order so that it conforms to the law." The State concedes this issue, "agree[ing] that the designation for count 1 (Distribution of Harmful Material to a Minor) should be corrected to reflect that defendant would only need to register as a sex offender because of his count 2 conviction (Sexual Exploitation of a Child)." We agree with the parties, the certification should be corrected to reflect defendant must register as a sex offender based solely on his conviction for sexual exploitation of a child.

¶ 42                                    III. CONCLUSION

¶ 43            For the reasons stated, we affirm the trial court's judgment but correct the order certifying defendant as a sex offender.

¶ 44            Affirmed as modified.

¶ 45            JUSTICE TURNER, specially concurring:

¶ 46            I concur in the majority decision affirming the trial court's judgment and correcting the order certifying defendant as a sex offender. However, I write separately because I reach my conclusion to affirm defendant's sexual-exploitation-of-a-child conviction for reasons decidedly different than the rationale relied upon by the majority.

¶ 47    In my view, this court's analysis in *White* explaining the statutory term "virtual presence" was well reasoned, and I agree with *White*'s holding that texting still images does not create an environment of virtual presence. *Supra* ¶ 15 (citing *White*, 2021 IL App (4th) 200354, ¶ 16). Nonetheless, defendant voluntarily pled guilty to sexual exploitation of a child, a Class A misdemeanor, and to distribution of harmful material, a Class 4 felony, in exchange for the State's agreement to limit defendant's length of incarceration to the number of days defendant had already served. Even though defendant knew his sexual-exploitation-of-a-child conviction per the plea agreement required him to register as a sex offender, the record reflects defendant vigorously sought to enforce the plea agreement when complications arose with DOC's methodology in properly crediting defendant for all of his time previously served. Defendant never raised any concerns with the plea agreement but instead invited the trial court to accept it by stipulating the State could prove the allegations of the charging instrument. Accordingly, I would find defendant's acquiescence in the proceedings below results in the waiver of his objections to the errors he now asserts for the first time on appeal. See *People v. Moore*, 2021 IL App (2d) 200407, 192 N.E.3d 75.

*People v. Melvin*, 2023 IL App (4th) 220405

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Livingston County, No. 21-CF-94; the Hon. Jennifer H. Bauknecht, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Catherine K. Hart, and Gregory G. Peterson, of State Appellate Defender's Office, of Springfield, for appellant. |
| **Attorneys for Appellee:** | Randy Yedinak, State's Attorney, of Pontiac (Patrick Delfino and David J. Robinson, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |